## RUCKMAN *vs.* PITCHER.

The losing party in an illegal bet or wager may recover from the stakeholder the sum deposited by him, although the stakeholder by his direction, given immediately after the wager is determined, has paid the money over to the winner.

An action to recover money deposited on an illegal wager may be maintained without demand.

A wager upon the result of a horse race in Queens county is unlawful, notwithstanding the statutes authorizing and regulating the racing of horses in that county.

A party who stakes a sum of money on an illegal wager may recover so much thereof as belongs to himself without joining in the action other persons who contributed specific portions of the fund.

ERROR from the supreme court, where the action was debt, brought by Ruckman against Pitcher, for money had and received contrary to the provisions of the statute against betting and gaming. The defendant pleaded *nil debet,* and the cause was tried at the New-York circuit held by KENT, circuit judge, in October, 1844. The case was this: The plaintiff made a bet of $3000 with one Minturn on the event of a trotting match to take place at the Centreville course on Long Island, and the money on both sides was deposited with the defendant as stakeholder. Minturn won the wager and immediately after requested the defendant to pay over to him the money. The defendant then asked the plaintiff, who was present, if he had any objection to the money being paid over and whether he was satisfied. The plaintiff replied that he was satisfied, and

*directed the defendant to pay over the money, which he accordingly did.* The evidence tended to show that other persons besides the plaintiff were interested in the money staked by him, and that in fact only $500 belonged to him.

The counsel for the defendant requested the circuit judge to charge the jury that the defendant was entitled to a verdict on the following grounds, viz. 1. That other persons being interested with the plaintiff in the money bet, the action was not properly brought in the name of the plaintiff alone; 2. That the race was not unlawful, being on a regulated course in Queens county, and authorized by the act of 1834; 3. That the money when lost was paid over by the consent and direction of the defendant; 4. That the plaintiff could only recover, if at all, the amount he was proved to be interested in the bet, to wit, $500; 5. That the action could not be maintained without proof of a demand of the money. The circuit judge charged the jury, that if the money was paid over by the consent and direction of the plaintiff, he could not recover. On the other points the charge was favorable to the plaintiff. The jury found a verdict for the defendant. The plaintiff made a bill of exceptions and moved the supreme court for a new trial, which was denied, and judgment rendered for the defendant.

*J. T. Brady,* for plaintiff in error. The circuit judge erred in charging the jury that the plaintiff could not recover if the money staked had, after the race, been paid to Minturn *as the winner thereof,* with the consent and by the order of the defendant. The revised statutes (1 *R. S.* 662, §§ 8, 9, 16) make the stakeholder liable, whether he has or has not paid over the money to the winner. His liability arises from merely having the stakes in his possession. In paying over the stakes to the winner he knew that he was violating the law, and that his liability to refund to Ruckman continued notwithstanding such payment. The consent to such payment could not make it legal, nor relieve the stakeholder from liability. There was no legal nor moral consideration for the transfer of the plaintiff's mo ney. On the contrary, it was transferred in violation of the law.

Any other rule would defeat the intention of the legislature, and destroy the utility of the statute against betting and gaming. The consent after the race, should not create any right, or change any liability, more than the consent involved in the wager itself, viz. that the stakeholder might deliver the stakes to the winner. (*Rev. Notes,* 3 *R. S. 2d ed. p.* 555, § 9.) There is no room for the argument that this was a voluntary gift of the money by Ruckman to Minturn like an ordinary donation. It was paid by a stakeholder, as the stakes of an unlawful wager, to the winner as such, with the consent of the loser, and in illegal satisfaction of the bet. To recognize the defendant's position on this point would be palpably circumventing the policy of the law.

If this court consider the other questions in the case, the plaintiff insists that this suit was properly brought in the name of Ruckman alone, he being the person who delivered the money to the defendant, and had the legal interest to demand it back. (1 *Chit. Pl.* 2, 9, *Springf. ed. of* 1839.)

Whether the race in question was or was not lawful, the wager upon its issue was void. (*Gouverneur* v. *Gibbons,* 1 *Den.* 170.)

The ninth section of the revised statutes gives the *right* of action, *instanter,* on the deposite being made with the stakeholder—not after demand made. To require a demand of the deposite from the stakeholder after he has paid it over would be absurd. No demand before suit brought was necessary. (*Downes* v. *Phenix Bank of Charleston,* 6 *Hill,* 297.)

*N. B. Blunt,* for the defendant in error.

JONES, J. It is claimed to have been shown, on the trial of this cause, that the race was run upon a regulated course in Queens county, in full accordance with the special statutes exempting certain races in that county from the prohibitions and penalties of the general statute on the subject of the racing of animals; (*Stat.* 1834, *ch.* 73; *id.* 1821, *ch.* 193;) and hence it has been insisted, that as the race itself was lawful under those statutes, the same statutes permitted and sanctioned the bet or

wager upon the result of the race. I understand the supreme court to have held that the wager was illegal, as coming within the general statute against betting and gaming, although the race itself was licenced by the special acts referred to, and I fully concur in that opinion. The argument in favor of the defendant in error is, that as the general statute relating to the racing of animals, prohibits such racing *for any wager, bet or stakes*, and the exempting acts allow the racing of horses on particular courses freed from the provisions and penalties of the general prohibitory act, it is therefore not illegal to wager money upon the result of the permitted race. It is evident, I think, that the only effect of the special statutes is to exempt the race itself from the penalties of the general law against racing, leaving the general statute which prohibits betting and gaming to have its full operation upon the wager on the event of the race. The statute against the racing of animals declares all running, trotting, &c. for any bet or stakes, except such as are allowed by special laws, common and public nuisances and misdemeanors, and that all parties concerned therein shall be deemed guilty of a misdemeanor, and shall be punished by fine or imprisonment. (1 *R. S.* 672, § 1; 1 *R. L.* 222, §§ 1, 2, 3, 4, 6.) The act against betting and gaming, (1 *R. S.* 662; 1 *R. L.* 223,) declares unlawful "all wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot or chance, or unknown or contingent event whatever, and that all contracts for or on account of any money or property or thing in action, so wagered, bet or staked, shall be void." These statutes relate to different subjects, contain distinct and separate provisions, affording different remedies, and imposing different penalties, as will be seen on a reference to the sections under each article. While, therefore, the special acts which have been referred to, may exonerate the parties concerned in the race in question from the provisions and penalties of the act against the racing of animals, I see no reason to doubt that the wager upon the result of the race comes fully within the provisions of the act declaring all wagers unlawful, and all contracts relating to them void.

Ruckman *v.* Pitcher.

The payment of the money over to the winner by the *consent and direction of the plaintiff*, constitutes the principal ground of defence. It is claimed for the defendant that he is discharged thereby from all liability to return or pay back to the plaintiff the money thus paid by his order to the winner. The plaintiff is bound, it is said, by his own act, and is precluded and estopped by his consent and direction to the stakeholder to pay the stakes to the winner, and the payment over of the same by the stakeholder, in obedience to such direction, from now claiming the money as being still his own, and coercing the payment of it by the stakeholder to himself. But how can that rule be claimed to apply? The question is not upon the abstract rights and obligations of parties left free to contract, consent and act for themselves, and bound by their admissions and acts. The liability of the stakeholder to the loser, and the loser's right of action against him, rest upon the statute. The legislature has prescribed the rules which are to govern the case, and our inquiry must be what the rules are which the statute intends to apply.

In the first place, the fact simply of the payment over of the stakes to the winner, can certainly be of no avail to the stakeholder, for the statute on that point is perfectly clear and explicit. It expressly enables and authorizes any person who shall pay or deliver or deposit any money or property upon the event of any wager or bet thereby prohibited, to sue for and recover the same of the winner or person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands the same shall be deposited, whether the same shall have been paid over by such stakeholder or not, and whether the wager was lost or not. In the present case the stakes were paid over by the stakeholder to the winner, and evidence was given to show that such payment was with the consent and by the direction of the loser, and the question must be upon the effect of such consent and direction as the proof shows to have been given, upon the claim of the loser and the obligation and liability of the stakeholder. In other words, whether the consent and direction of the loser to the stakeholder

Ruckman *v.* Pitcher.

to pay over the bet or stakes to the winner, and the actual pay-ment over of the same under that direction varies the case, and deprives the loser of the right the statute gives him to re-claim and recover back the same of the stakeholder who has thus paid it over.

It is contended, on the part of the defendant, that the statute applies to voluntary payments only of the stakes by the stake-holder to the winner, without the direction or assent of the loser, and not to payments by the order or with the consent and per-mission of the depositor. And it is urged that if the money or stakes, notwithstanding the result of the race, was still the money of the depositor, and at his disposal, his order to the stakeholder to pay it to the winner was a valid disposition of it obligatory upon the stakeholder, and which the loser could not be permitted to revoke or disregard. To this the counsel for the plaintiff replies, that the statute gives to the loser the un-qualified right to sue for and recover his stake or deposit of the stakeholder, whether such stake or deposit has been paid by the stakeholder to the winner or not ; that the right to recover is absolute, and previous payment to the winner is no defence. The clear and obvious import of the language of the statute is that the payment of the stakes or deposit by the stakeholder to the winner, does not discharge or exonerate him from his liability to pay the same to the loser, who has a perfect right, notwithstanding such payment to the winner, to recover the same from the stakeholder. There is no provision made or intimation given by the statute, that the consent of the loser to such payment, or his direction to the stakeholder to pay the same to the winner, shall give effect to such payment as a dis-charge to the stakeholder, or a bar to the loser's action against him. And in my judgment, any construction of the statute which should limit and confine its application to voluntary pay-ments of the stakes by the stakeholder to the winner, and allow such payment over, when by the order or with the consent of the loser, to be valid and effectual as a discharge to the stake-holder, and a defence for him to the action of the loser, would contravene the sense and policy of the statute, and materially

impair the value of the provisions on which its successful operation must depend.

I agree that in ordinary transactions the order or direction of a person having money in the hands of another, to pay it to a third person, will authorize and justify him in whose hands the money is, to pay the same on such order, and that such payment will be a perfect defence for the party who has thus paid it over, against any claim or action therefor by the owner. But this was not the ordinary case of the direction of a person having money in the hands of another to pay it to a stranger or third person. It was the consent of a loser of a bet to a stakeholder to pay that bet to the winner. It was given by the loser on the race-course upon the authoritative announcement of the result of the race, and on the application of the stakeholder to him for permission to pay over the stakes to the winner, as being won by him. The very time and place when and where the application was made, and the consent given, characterize it as a mere assent and acquiescence of the loser in the loss of the bet, and the right of the winner to it, and the consequent authorization of the loser to the stakeholder to pay it over accordingly. Look at the transaction as narrated by the witness. The whole alleged direction was simply this: On the application of Minturn the winner, to Pitcher the stakeholder, upon the decision of the judge that the race was won by Americus, for the stakes as won by him, Pitcher, the stakeholder, called Ruckman, the loser, who was on the ground, and asked him "*if he* had any objection to handing over the money, and if he was perfectly satisfied." He replied that "*he* was," and "to hand over the money." What was this reply to the stakeholder's question more than a mere assent of Ruckman, the loser, to the decision of the judge as to the result of the race, and that his bet upon it was lost by him, and that the stakes were to be paid to the winner? The consent and direction given were to pay the money to Minturn, as money won by him, and to which he was entitled as the winner. It was in no sense of the terms a direction by the plaintiff in error to the defendant to pay money in his hands belonging to him,

Ruckman v. Pitcher.

the plaintiff, which he had the right and the power to dispose of as he saw fit, and which was subject to his order in favor of Minturn, or any other person, at his own free will and pleasure. It was distinctly and emphatically an acknowledgment by him that the money belonged not to himself, but to Minturn, and was in the defendant's hands as the money of Minturn, and to be paid to him. It was simply a consent, or at most, an order by the loser on the stakeholder to pay a bet lost by him to the winner. He had before, by the deposit of the money in the hands of the stakeholder as his stake upon the event of the race, virtually authorized and directed him, the defendant, to pay over the same to the winner, in case the bet should, by the result of the race, be lost by him. The direction given by him in his answer to the question put to him by the stakeholder after the race was decided against him, to hand over the money to the winner, was simply the recognition and repetition of the authority before given by him when he made the deposit " to pay over the same in case of loss." But that consent and authority thus given to the stakeholder at the time of the deposit of the stake in his hands, to pay the same to the winner, the statute intended to cancel and annul. It was effectually annulled by authorizing the loser, in disregard of it, to sue for and recover back his deposit after the loss of the bet, from a stakeholder who had paid it over to the winner, notwithstanding such payment of it over by him. I can discover no evidence in the bill of exceptions before us, of any assent or order of the plaintiff to or for the payment over of the money, which does not refer to his express or implied instructions to the stakeholder at the time of the deposit, or was not manifestly in compliance with the contract of wager, and for the fulfilment of engagements it imported. And if I am right in my views of the statute, neither any express directions given at the time of the deposit, nor the implied authority incident to the deposit of the money with the stakeholder, as the stake upon the race, nor the repetition or renewal of that authority after the race was run and the bet decided, nor an assent, order or direction given at the time when the loss of the bet was announced, to pav

over the stake to the winner, can be available as a defence to the action of the plaintiff for the recovery of the deposit.

The evident intention of the legislature was to discourage and repress gaming in all its forms, including bets and every species of wager contracts of hazard, as a great public mischief, calling for effective measures of prevention and remedy. Under our system of jurisprudence, as it existed previous to the revised statutes, wagers not against morals or sound policy, and of no evil or pernicious tendency, and not prohibited by statute, were held not to be illegal; but all wagers and bets which are contrary to morality or public policy, or which tend to endanger the public peace, or affect the character or feelings of the citizen, or are otherwise of evil tendency, as well as those which were prohibited by statute, were held to be illegal and void; and no action at law could be maintained by the winner against the loser to recover the money bet or wagered, however fairly as respected the chance or hazard, and the issue or event of it, the same might be lost and won. If, however, the money or bet, not recoverable by law, was voluntarily paid by the loser to the winner, no action could be sustained by the loser to recover it back; for the wager being illegal and the contract void, and the winner and loser both implicated in the illegality, the law would lend its aid to neither against the other for consummating or giving effect to any alleged right or claim growing out of the same, or in immediate connection therewith, but would leave the party in possession of the fund or money, to retain and hold it against the other; not from favor to the possessor, or from respect to *his* as the superior title thereto, but from disfavor to the illegal transaction, and in support of the statute or common law prohibition of it. This denial to the winner of the aid of legal process against the loser, for the compulsory payment of the bet to such winner, when won by him, was calculated, and doubtless tended to discourage wagers and bets understood to be illegal. But it was counteracted by causes which the laws could not reach or control. The loser, under the pressure of influences too powerful for him in the excitement of the ace or game to withstand, would most generally,

Ruckman v. Pitcher.

on the decision of the bet, pay the money lost to the winner. But instances would occur of losers who would avail themselves of the defence and protection which the law, in refusing its aid to the winner, furnished them against the payment of the bet. It was of course desirable and important to betters to guard against the exercise of this power of the loser thus to repudiate and render abortive the right and claim of the winner to the money won of him; and the readiest and most reliable measure of protection against it, was the intervention of a stakeholder, with whom the stakes should be deposited and placed for custody and for delivery over to the winner on the result of the race or game. The stakeholder would have no personal interest in the stakes to swerve him from his engagement and duty to pay the same over to the winner; and the money, when thus paid over to the winner, would be secured to him beyond the power of the loser to reclaim it or recover it back. But under this arrangement it was a point still unsettled, whether the loser could not, in the interval, after the loss of the bet, and before the payment of the money to the winner, reclaim his stake and sustain an action against the stakeholder for the money so deposited with him. It was a question which underwent much discussion, and on which opinions were divided. In England the rule was finally settled that when money was thus deposited with a stakeholder on an unlawful race or game, and had not been paid over by him, the loser might, after the event on which the bet was made to depend had happened, and was known, recover back the stake or money so deposited with and yet remaining in the hands of the stakeholder; but that when such stake or money had been, after the loss of it, paid over to the winner with the loser's consent, the loser could not afterwards maintain an action against the stakeholder to recover back such deposit.

The decision on the point was at first the same way with us. The question came before the supreme court of this state in the case case of *Vischer* v. *Yates*, (11 *John. Rep.* 23.) The action was by the loser against the stakeholder, to recover back his deposit on a wager or bet upon the election for governor of

the state, which had resulted adversely to the plaintiff, and his bet was lost; but the stakes had not been paid over by the stakeholder to the winner, and Chancellor Kent, who was then the chief justice of that court, was of opinion that the wager was illegal as being against public policy, and he held, in accordance with the English rule, to which he adverted in terms of approbation, that the deposit, being upon an illegal wager, and remaining still in the hands of the stakeholder not paid over to the winner, might, though the bet was decided against the plaintiff, be recovered back by him of the stakeholder; and the other members of the court concurring with him in opinion, judgment was rendered for the plaintiff. There were several actions then pending in the same court, involving the same questions, and judgments were given for the plaintiffs in them all. But on a review of that decision by the court for the correction of errors, in one of those cases (the case of Yates v. Foot,) the judgment was reversed; and that court held that money deposited with a stakeholder as stakes, upon a wager void by the common law, could not be recovered back from the stakeholder by the depositor after the event had happened on which the wager depended, although it remained still in his hands not paid over, and he had notice from the loser not to pay it over to the winner. Senator Sandford, who delivered the opinion on that occasion, states the rule to be, that in cases of illegal wagers and contracts of hazard, void by the common law, and which either party might rescind, the party who elected to rescind must make his election, and take his action upon it before the contingent event happens, for that the happening of the event is the crisis in the contract which terminates all option and election of the party to revoke or rescind it; that before the contingency happens, either party may recede, but that after the result is known, neither party can retract; and applying the principle to the case then before him, he held that as the hazard had ceased and the result of the election was known, no action could be allowed or maintained to recover back the money or stake in the hands of the stakeholder. On these grounds that court decided that the loser could not recover

Ruckman *v.* Pitcher.

back his deposit. The statutes against gaming and horse racing were then subsisting and in force, but the wager then in question did not come within the provisions of either of them. And it was admitted by Senator Sandford that the rule deduced by him from the principles of the common law, did not apply to cases of gaming and horse racing. These two species of contracts of hazard, he observed, had been made the subject of special legislation ; that they were the only classes of hazardous contracts in which the loser was allowed to reclaim and recover back the money he had wagered after the event was known and the wager lost; and that the object of the legislature was to suppress them, evidently on the grounds of public policy. This decision was in 1814, and as the law of this state was thereby declared to be, the better who deposited money with a stakeholder on an unlawful wager, not within the prohibitions of the statutes against gaming or horse racing, could not, after the bet was lost, recover back his deposit ; and whether the money had been paid over to the winner by the stakeholder, or remained in his hands, was of no consequence ; the loser could in neither case, after the loss of the wager, maintain an action against the stakeholder for it. The bet therefore, though illegal, if in deposit with a stakeholder true to his trust, was under no effectual legal restraint or interdiction, unless it was within the scope of the statutes against gaming or horse racing. These statutes professed and were intended to suppress the mischiefs to which they referred, but they differed greatly in the extent of the provisions they contained, and the efficiency of the remedies they applied, for the purposes intended. The statute against horse racing expressly prohibited all horse racing for wagers or stakes within the state ; and the penalties affixed to the offence were so severe and stringent as to ensure to a moral certainty the suppression of the mischief. But the statute against gaming fell far short of that against horse racing in efficiency. It professed to be " An act against excessive and deceitful gaming," and it contained some wholesome provisions. It repressed and punished with due severity all deceit, fraud, cheating and unfair practices in the species of gaming it prohibited, and in

betting upon the game; but its provisions against bets and gaming, as being themselves illicit, and intended to be repressed, were not sufficiently comprehensive and coercive to make them effectual. The statute provided and declared that all securities and conveyances for money or property won by play at any game, or by betting thereon, or bet or advanced for those purposes, should be void, and losers to the amount of $25 at any one time or sitting, who should pay the same, were enabled to recover back the same at any time within three months, from the winner, with costs. By the 5th section of the statute to prevent horse racing, and for other purposes, subsequently passed, it was in substance further provided, that all contracts for, or on account of, any money or other thing bet, or staked, or depending on any such race, (referring to the race before mentioned in the statute,) or concerning the same, or for or on account of any gaming by lot or chance, of any kind or description, should be deemed and adjudged void, and that it should be lawful for any person who might have paid any money or other thing upon the issue or event of any such race or game, to recover the same in like manner as provided in the 2d and 3d sections of the act entitled an act against excessive and deceitful gaming. And by those sections of that act the action was to be brought within three months, and was to be against the winner. These provisions and penalties were thus limited to the species of gaming by play at any game, or by lot or chance; to bets upon such gaming, and to money lent for those purposes; and the action given to the loser was limited to three months, and to be against the winner only—provisions of much importance and use indeed, but obviously inadequate to the suppression of the offences they were intended to prohibit and prevent.

The revised statutes which went into operation in 1830, fully supplied the deficiency, and indeed have gone the whole length of prohibiting all wagers, bets, and stakes upon any contingent or unknown event, with the exception only of contracts of insurance, and upon bottomry and respondentia, and have enabled the loser to recover the money wagered and lost, not only of the

Ruckman *v.* Pitcher.

winner,.but also of the stakeholde , notwithstanding that he may, after the loss of the bet, have paid the same over to the winner. It was manifestly the intention of the legislature to suppress and prohibit every species of wager and bet, either upon the racing of animals, or upon any contingent or unknown event whatsoever, other than the contracts expressly excepted, and to abolish all distinction between lawful and unlawful wagers, and make them all invalid and void. As one of the bes and surest means of accomplishing that end, the provision was adopted enabling and authorizing the loser to sue for and recover back his stake or deposit from the stakeholder, whether the race or game may have been lost or not, or the money paid over to the winner or not. Anterior to the revised statutes, questions were liable to occur upon the legality of the wager, and the provisions and penalties applied by the laws to the preventing or the suppression of those adjudged to be unlawful might be evaded by the betters, or might prove inadequate to the effectual restraint of the offence. And the action given by the statutes to the loser to recover back the money lost and paid by him, was too limited and defective to be, for any purpose, a reliable remedy. For the provision giving the action limited the time for the commencement of it to the short space of three months, and applied it to the winner, without any notice of the stakeholder or reference to him. The remedy thereby, upon a strict construction of the act, would be against the winner alone ; or if the terms of the 5th section of the act against horse racing admitted of an exposition sufficiently broad to include the stakeholder, in the cases to which that section refers, as being a party to whom the loser had paid the money he sought to recover back, the action for it, against him, to be effectual, must be brought before the same was in good faith paid over to the winner. And it is quite obvious that the payment over of the stakes to the winner may be made so promptly upon the decision of the race or game, as not to allow sufficient time to the loser to arrest it, by his action, in the hands of the stakeholder, and that the loser's recourse to the stakeholder would thus be frustrated.

Ruckman *v.* Pitcher.

But under the provisions of the revised statutes, those diffi-culties and doubts cease to exist. The article entitled " of bet-ting and gaming," is general, comprehensive and explicit. It embraces and embodies the pre-existing restraints upon betting and gaming, with the further provision making the stake or deposit of the loser recoverable by him of the stakeholder, either before or after the loss of the race or game, notwithstanding that the same may have been paid over to the winner, and whether the same has been thus paid over or not. This fur-ther provision thus rendering the payment over of the stake to the winner of no avail to the stakeholder as a defence to the action of the loser against him under the statute for the recov-ery of it back, gives to the present system a decided advantage over that which preceded it, for suppressing the obnoxious prac-tices of betting and gaming. And if full effect be given to it, and it shall be fairly applied and carried out, it must have an efficient agency in the accomplishment of the purposes of the statute. But to give it that effect, the loser's assent to the pay-ment over of the stake, or his order directing it, must not be allowed to affect the stakeholder's liability : for when the wager is upon an event or contingency unknown to both the parties, and the result is uninfluenced by either of them, and no decep-tion, fraud or unfair practice is imputable to the winner, the loser will very rarely dissent from the payment of the stake to the winner ; but will, when present and called upon for his consent, usually acknowledge the winner's claim, and authorize the payment of the stake for him by the stakeholder accord-ingly. To allow such consent and authority of the loser, so given by him, to be a sufficient warrant to the stakeholder to pay over the money, and an effectual defence to the action of the loser against him, would be to open the door to evasions of the statute, which would essentially impair its provisions and render it altogether inadequate to the purposes for which it was intended. The statute, to be effectual, must be construed and held to provide that no payment of the stakes by the stake-holder to the winner, either without the consent of the loser or with such consent, shall be a defence for the stakeholder to the

Ruckman v. Pitcher.

action of the loser against him for the same. That such was the intention of the framers of the statute, the defects in the pre-existing laws which the further provision of this statute was intended to supply, the remedy it provides, and the language it employs, appear to me to fully and clearly evince. It was the agency and concurrence of the loser in giving effect to the illegal contract of wager, and chiefly the consent and direction so habitually given by the loser, to the payment of the stakes to the winner, which under the former system rendered the provisions of law against betting and gaming so ineffectual; and it was to provide a remedy for that evasion of the former statutes, that the action was given to the loser in its present amplitude, vesting in him the unqualified right to recover back his deposit from the stakeholder who had paid it over to the winner. The language of the statute giving the action is full, clear and explicit; the right to sue for and recover the deposit of the stakeholder is unconditional, and applies to all cases of deposits and stakes, whether the bet is lost or not, or the stake is paid over or not. The statute makes no exception of payments with the consent or by the order of the loser, and the court can make none.

It is incorrect and unjust to predicate of this denial of effect to such consent of the loser of the bet, that it encroaches upon his right to the free disposition of the fund, or interfered with his power over it. He had a perfect right and was at full liberty to dispose of it as he pleased, and to order and direct it to be paid by the defendant to any person whomsoever, other than the winner as being entitled thereto on the ground that he had won the wager. The plaintiff in error, being the owner of the money, had the right to call upon the stakeholder for it himself, or to dispose of it to others, and order and direct the payment of it to them; and the payment of it to such order by the defendant would be perfectly regular, and would discharge him from his liability therefor to the plaintiff. But the plaintiff in error, as loser, could not direct the payment of the stake to the winner as being won by him. Such order and direction, and the payment under it, would be in consummation of the un-

lawful bet, and if permitted would give effect to the contract which the statute declares to be void.

If such order and direction of the loser to the stakeholder to pay over the stakes to the winner, could have the efficacy ascribed to it by the defendant in error, it must be either because the payment over of the money is by such consent and direction authorized and made a legal and valid payment, or because the loser who gives it precludes himself thereby from afterwards contesting its validity or asserting a claim to the money after his waiver of his right to it, and in disaffirmance of his own disposal of it to another person. In questions between parties to contracts and transactions, on common law principles, where no statute rule intervenes, those grounds of objection to a plaintiff's right of action would be available, and might be conclusive. But in the application of statutory provisions, the rules given by the statute are to govern. The statute under consideration, which makes the wager illegal, and the contract void, implicates the stakeholder in the illegality; and to render the remedy it provides against him effectual, authorizes and enables the depositor to recover back a stake deposited with him as stakeholder, after he has paid it over, and notwithstanding such payment. He therefore cannot exonerate himself from his liability to the action of the loser for the deposit, by paying the money over, but must continue, notwithstanding such payment, amenable to the loser for it. And any consent or order of the loser to him to pay it over, as it contravenes the spirit and intention of the statute, and tends to impede its operation and frustrate its design, must be nugatory and inoperative.

In the case of *Lewis* v. *Miner*, (3 *Denio*, 103,) it was contended that the loser, by the payment or delivery over of the money or thing wagered, consented to part with the property, and had no remedy by the common law to recover it back. Such was admitted to be the common law rule, but the court held that the statute nullifies the consent, and gives the loser a remedy by action. The demand was there against the winner; but the question was on the effect of the consent of the loser to part with his property, and upon his right of action to recover it

Ruckman v. Pitcher.

back; and the opinion expressed by the chief justice was, that the statute "nullified the consent," and gave the loser a remedy by action. How are we to distinguish that case in principle from this? The point was that the statute nullified the con sent of the loser to the payment of the wager when lost to the winner. And if the payment of it direct to the winner is nullified, must not the consent and direction to the stakeholder to pay it over be equally inoperative and void? The stakeholder is the agent of the better, and takes the money deposited in his hands as the better's stake, under the express or implied engagement to pay it over when lost and won, to the winner. If the wager had been lawful, and the contract valid, he would need no other or farther assent, order or authority from the loser to pay it over; or if the statute had left the stakeholder at liberty to fulfil his engagement, and had not interdicted the payment of the stakes to the winner, such payment would have exonerated him from his liability. But the statute, by giving the loser an action against him for the money, after the payment of it over by him to the winner, has, in effect, interdicted such payment over, and made the same ineffectual and of no avail to him as a defence to the action of the loser against him. The authority given by the original deposit to pay over the stake upon the loss of the bet to the winner, is necessarily nullified by the provisions of the statute giving the loser a remedy by action to recover it back; and the repetition of that authority by the consent and direction given immediately after the loss, to pay the same over, cannot surely give validity to a payment which the statute thus impliedly interdicts. Such subsequent consent and direction is in effect nothing more than the affirmance of the contract and authority created and given by the original deposit, and an order and direction to fulfil and perform it in disregard of the statute.

In the case of *Ruckman* v. *Bryan*, (3 *Denio*, 340,) the defendant had borrowed a sum of money of the plaintiff to bet on a horse race, which had been deposited with a stakeholder, by whom the same, on the decision of the race, had been paid over to the winner. The defendant, who was the borrower, had

afterwards promised to pay the loan to the plaintiff; and action was by the lender against the borrower for the money. The court wholly disregarded the subsequent promise of the borrower, made after the loss of the race, to repay the loan; and held such loan to be illegal, and the money lent irrecoverable by the lender of the borrower. So here, the payment over of the stakes by the stakeholder to the winner, being in itself inoperative as a discharge of his liability, the consent or direction of the loser to him to pay the same over, could not impart to it the force and validity of a duly authorized and available payment. Such payment of the money wagered, by the stakeholder to the winner, on the ground that he had won the wager, whether with or without the consent and direction of the loser, is the payment of an illegal bet, in consummation of an unlawful and void contract. The order or direction of the loser to the stakeholder to pay it, cannot and does not change the nature or character of the payment. And no such consent or direction can, in my judgment, be a defence for the stakeholder against the action of the loser given to him by the statute. Such, I understand to be the rule laid down in the case of *Lewis* v. *Miner* as applicable to the case of an action by the loser against the winner. And it appears to me to be equally applicable to the case of an action against the stakeholder.

I am, however, not to be understood to hold that the money wagered and deposited with a stakeholder can, under no circumstances, be directed by the depositor, after the loss of the wager by him, to be paid to the person with whom the bet was made; but if such direction of the loser can, consistently with the terms and policy of the statute, be allowed in any case, (other than an actual bona fide purchase,) to avail the stakeholder for his justification, it must surely be on the ground that such consent and direction have been freely given for the payment of it, not as money to be paid over to a winner as a stake won by him, and thereby become his money, but as money of the loser, directed by him to be paid to the winner, not as having any right to it, but as the free and voluntary gift and gratuity of the loser to him. It would be highly improbable,

Ruckman *v.* Pitcher.

I will not say impossible, that any such case should ever occur, and in perfect good faith exist. And I hold it to be clear that no consent or order of the loser to pay the money or stakes lost to the winner, *as money won by him,* can in any case give the winner any claim thereto, or the stakeholder any right or authority to pay the same to him. The stakeholder can consequently avail himself of no such consent or direction as an authority to him to pay the loser's deposit to the winner as money or stakes won by him on the issue of the race or game, nor claim the benefit of such payment as a defence to the action of the loser against him for the deposit.

In this case it is admitted and avowed that the money was paid by the defendant to the winner as money won by him on the race. The judge, in his charge to the jury, instructed them that if the money was paid to Minturn after the race, as winner of the stakes, by and with the approbation and consent, and upon the order of the plaintiff, such payment was a bar to the plaintiff's right of action against the defendant. This direction, in our view of the law was clearly incorrect, and vitiates the verdict. The jury could not, if guided by it, find otherwise than they did. The proof was full and clear that the money was paid to Minturn after the race, as winner of the stakes, with the consent of the plaintiff in error, given on the race-course at the time the race was run and the result announced. It was paid as money lost, and received as the stakes won upon the race. Such payment must, I think, be deemed as fully within the provisions of the statute, as a payment by the loser himself to the winner would be.

But again, it is objected that as the payment of the stakes by the stakeholder to the winner gives the loser a right of action against the winner for the recovery of the same from him, the proper resort of the loser is to him, and recourse cannot be permitted to the stakeholder also, as a double satisfaction might thereby be obtained. It is a sufficient answer to this objection, that the statute in express terms authorizes the loser to sue for and recover his deposit or stake of the stakeholder, whether he has paid the same over to the winner or not. The loser, as-

suming that he would be confined to one satisfaction, might surely have concurrent remedies therefor, against both the stakeholder who paid over the stake, and the winner to whom it was paid, and be entitled to take his remedy against either of them, and against the stakeholder in the first instance. He consequently must have the right to prosecute his action against such stakeholder to judgment and execution, and could not be turned round to his action against the winner, and thus be driven to a remedy against a party who might be irresponsible and unable to pay. Whether the loser would have the right to pursue the winner after a fruitless recovery against the stakeholder, or be entitled to other or double satisfaction, are questions with which we have nothing to do in this action. If he is restricted to a single satisfaction, and obtains it in his action against the stakeholder, the fact of such satisfaction so obtained in such suit would be available to the winner as a defence to an action for the same cause against him.

The objection of the non-joinder of other parties having an interest in the bet, as plaintiffs, assumes that others were interested with the plaintiff in error in the bet, and that their interest made them necessary parties to the suit. It does appear that the money wagered and staked did not belong wholly to the plaintiff in error. Two of the witnesses testify to contribution by them to make up the sum, one to the amount of $100, the other to $50, and each of them states that he paid to the plaintiff his contribution, and avers that he had not authorized this suit for his part of the stakes. There may have been other contributors, who, or some of them, may have paid their contributions; and as respects some of those shares and interests in the deposit, the right of the plaintiff in error to recover may be questionable: but if the shares of those who disapproved acting are to be disallowed, and even if in addition thereto the interest of all other contributors shown to have an interest in the bet are also to be excluded, the plaintiff in error would still be entitled, if his action was otherwise maintainable, to recover the residue of the sum wagered and bet shown to belong to others. And so the judge in effect decided; for he instructed the jury

that the plaintiff, if entitled to recover, was entitled to recover the amount of the money bet and lost by him, less the two sums of $50 and $100, belonging to persons who had not authorized the suit.

But it is further objected that no demand is shown to have been made of the return or repayment of the money before the commencement of the action. The answer is, that no demand was necessary. The statute makes the stakeholder liable absolutely and at all events, and gives the loser an immediate right of action against him. No demand could be necessary; especially in a case like this, where the money had been actually paid over to the winner. Whether a previous demand would have been necessary or proper, if the action had been brought before the race was run, and when the event on which the bet depended was still contingent and undetermined, or the action might even in that case have been brought and maintained without any previous demand, it is not necessary now to inquire, for this defendant has actually paid over the stakes to the winner; and as such payment over was, in our view of it, without sufficient authority and in his own wrong, he made himself liable to an immediate action against him, and a previous demand, if otherwise proper, would be unnecessary. The judgment must be reversed.

Judgment reversed.

Bronson, J. dissented.