### F. M. TUCKETT v. FRANK L. HERDIC.

#### No. 99.

1. **Wagering Contract — Ives Pool Bill — Laws of New York.—** That part of the Ives pool bill which suspends for thirty days during each year a part of the penal code upon the grounds of certain associations organized for the purpose of improving the breeds of thoroughbred or trotting horses, and confines pool selling upon races to the grounds of such associations and to the times of such races, does not affect the civil statute of New York which prohibits pool selling upon horse races, and provides that contracts growing out of the same in which the parties are both participants can not be enforced. Moreover, neither the pleadings nor proof bring the transaction complained of in this suit within the provisions of the Ives Pool Bill, or show that it is not controlled by the general law proved.

2. **Lex Loci.—** If the contract was void by the laws where it was made, no validity can be imparted to it by bringing suit upon it in a different forum.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

*Dickson & Moroney*, for appellant.— 1. When a wagering contract is made void by the general statute law, and a special statute is passed creating an exception to such general law, any person claiming the benefit of such exception, in order to sustain a wagering contract, must do so by affirmatively bringing himself within the provisions of such special statute by proper pleading and proof.

2. When defendant is sued on a contract made in another State and governed by its laws, and defendant pleads a general law making such contracts void, and plaintiff relies on a special statute operating as an exception, he must plead such special statute, or he will not be permitted to prove it. Steph. on Plead., sec. 7, rule 10; Endl. on Interp. of Stats., sec. 184.

3. When a class of wagering contracts is made invalid by the civil statutes, and is also made a crime by the penal code, an amendment to the penal code creating exemptions from its provisions will not, ipso facto, also repeal the civil statute. The courts will not hold a statute repealed by implication when both statutes can consistently stand together. Endl. on Interp. of Stats., sec. 216.

*G. G. Wright,* for appellee.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought by appellee to recover $1834. It was claimed that in August, 1888, plaintiff below was engaged in selling pools and "Paris mutuals" on horse races, at the race grounds of the Island Park Association, in the city of Albany, New York, under the management of which association the races were being carried on. That during August, 1888, defendant purchased pools on said races amounting to $4459.50, on which he realized $2826.50, leaving a balance due plaintiff of $1633, which plaintiff paid to the holders of the winning tickets. That plaintiff also paid for him, to the winners, $201 on "mutuals" on horse races. Judgment was rendered in the court below for plaintiff, from which this appeal was taken.

*Opinion.*—The first assignment of error which we deem it necessary to notice is as follows: "The court erred in not holding that the alleged contracts sued on by plaintiff were, under the evidence, void by the statute laws of New York, by the laws of which State they were governed, and in not sustaining defendant's plea that said alleged contracts were void on that account."

The following statement under this proposition, from appellant's brief, substantially sets out the facts bearing upon this issue:

"The transactions involved in this suit all occurred in New York. The contracts were made and were to be performed there, and are admittedly governed by New York law. The contracts are all wagering contracts. At this time the Revised Civil Statutes of the State of New York, part 1, chapter 20, title 8, article 3, provided as follows:

"'Section 8. All wagers, bets, or stakes made to depend upon any race, or upon any gaming by lot or chance, casualty, or unknown or contingent event whatever, shall be unlawful. All contracts for or on account of any money or property or thing in action so wagered, bet, or staked, shall be void.

"'Section 9. Any person who shall pay, deliver, or deposit any money, property, or thing in action upon the event of any wager or bet herein prohibited, may sue for and recover the same of the winner or the person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited such wager, bet, or stake, or any part thereof, whether the same shall have been paid over by said stakeholder or not, and whether any such wager be lost or not.

"'Section 10. The last two sections shall not be extended so as to prohibit or in any way affect any insurance made in good faith for the security or indemnity of the party insured, and which are not otherwise prohibited by law, nor to any contract on bottomry or respondentia.'

"After the passage of the Revised Civil Statutes from which the above

is taken, a special statute, commonly known as the Ives Pool Bill, was passed May 26, 1887, by the New York Legislature. This statute is entitled, 'An act prescribing the period in each year during which, and the terms under which, racing may take place upon the grounds of the associations incorporated for the purpose of improving the breeds of horses, and suspending the operation of certain sections of the Penal Code.' It provided:

" ' Section L. A tax of 5 per centum upon the gross amounts of the receipts for admission on race days to race tracks or grounds on which racing is had, owned, leased, or conducted by a racing association, incorporated under the laws of the State of New York for the purpose of improving the breed of horses, whether for the improvement of the thoroughbred or the trotting horse, shall be annually paid by such associations to the Comptroller of the State of New York within fifteen days after the 1st day of December in each year.'

" ' Section 4. The number of days upon which races may be conducted upon any race track or grounds is limited to thirty days in each year, and during that number of days only races shall be authorized and allowed upon such tracks and grounds, during which time the same may be kept open for the admission of the public, subject to the conditions and limitations prescribed by the acts or several amendments thereto under which the said associations were incorporated; and the provisions of sections 351 and 352 of the Penal Code shall not apply to the grounds of such associations during the number of days in each year during which the said races are hereby authorized; that such racing and all pool selling in this State shall be confined to the period between the 15th day of May and the 15th day of October in each year, and all pool selling shall be confined to the tracks where the races take place, and in the days when the races take place.'

" ' Section 7. Any person who shall engage in pool selling at any time or place except as herein before stated, shall be guilty of a felony, and upon conviction shall be punished by imprisonment in the State prison for a period of not less than one nor more than five years.' "

It also contained numerous other provisions not material to this case.

It was agreed on the trial, without formal proof, that the Revised Statutes first above quoted were in full force in New York at the time of the transaction between plaintiff and defendant, except in so far as such provisions of the Revised Statutes were repealed, suspended, or superseded by the special statute of May 26, 1887, which was passed after the adoption of the Revised Statutes.

The Island Park Association was organized under the laws of the State of New York in 1884, before the passage of the Ives Pool Bill. The only testimony as to the objects or purposes of the association was, that it was organized " for the purpose of trotting horses and holding meetings, and

generally known as a gentleman's trotting association." There was no testimony whatever that the association was organized " for the purpose of improving the breed of horses, whether for the improvement of the thoroughbred or the trotting horse," as provided in the Ives Pool Bill. Neither was there any testimony to show that the pool selling in question in this case took place within the thirty days limited by the pool bill. The substance of the general provisions of the Revised Statutes were pleaded by defendant. Plaintiff did not plead the pool bill in reply.

Under the general laws of New York it is provided, that all contracts for or on account of any money or property or thing in action wagered, bet, or staked, shall be void. It is sought to avoid the force of this law by showing an act of the Legislature of New York, passed May 26, 1887, whereby racing is regulated upon the " grounds of certain associations incorporated for the purpose of improving the breeds of horses, and suspending the operation of certain sections of the Penal Code."

On the grounds of such associations certain sections of the Penal Code are suspended for thirty days in each year.

1. It is not shown that the Island Park Association, which seems to have been organized " for the purpose of trotting horses and holding meetings, and generally known as a gentleman's trotting association," comes within the provisions of the Act of 1887, or that it was incorporated for the purpose of improving the breeds of horses as referred to in that act. In fact, this association seems to have been organized before the act, and without any reference to it, or to improving breeds of horses. Under these statutes, was the contract sued upon a legal demand under the laws of the State of New York?

It is claimed by appellee that he was a pool seller engaged in selling pools on horse races at Albany, New York, at the race grounds of the Island Park Association, and under the management of which association the races were being carried on. He purchased for defendant pools on the races amounting to $4459.50, on which defendant realized $2826.50, leaving a clear loss on the races of $1633; and plaintiff's commission on the pools was $87.50. Plaintiff also sold defendant the " Paris mutuals," on which his loss was $201. This was clearly an unlawful and wagering transaction, to which plaintiff was a party, and is void under the laws of New York, unless plaintiff has shown that it comes within some exception to the general law proved in this case. He has not done so. His pleading does not allege that the transaction comes within the provisions of the Ives Pool Bill, passed May 26, 1887; nor does the testimony bring it within that act. But suppose it did. A proper analysis of that part of the act which is in evidence will show: First. The levy of a tax of 5 per cent upon the gross receipts for admission on race days to the grounds of such associations as were incorporated to improve the breed of thoroughbred or trotting horses. Second. The limitation of thirty days in the year

in which races are authorized on such tracts and to be open to the public; sections 351 and 352 of the Penal Code not to apply on said grounds during such thirty days; and all such racing and pool selling to be confined to the period between the 15th day of May and the 15th day of October, and to the tracks where the races were to take place, and to the days of such races.    Third.    Making it a felony to engage in pool selling at any other time or place.

Under the general statutes of New York, it is not questioned that pool selling on horse races is prohibited by law, and that contracts growing out of the same, in which the parties are both participants, can not be enforced.    Ruckman v. Bryan, 3 Denio, 341 (17 N. Y. Com. Law Rep., 380).

That part of the Ives Pool Bill which suspends for thirty days during each year a part of the Penal Code upon the grounds of certain associations organized for the purpose of improving the breeds of thoroughbred or trotting horses, and confines pool selling upon races to the grounds of such associations and to the times of such races, does not affect the general statute of the State of New York, part 1, chapter 20, title 8, article 3, which provides, that "All wagers, bets, or stakes made to depend upon any race  *  *  *  or contingent event whatever, shall be unlawful. All contracts for or on account of any money or property or thing in action so wagered, bet, or staked, shall be void."    Because the State does not punish criminally the offense during the limited period mentioned at certain places, is no ground for holding such illegal contracts valid, when the civil statutes declare them to be void.    This position is well-sustained by authority.

In the State of New York this general statute, which has been in force since 1802, was construed by the Supreme Court of that State in the case of Gibbons v. Governor, 1 Denio, 170 (16 New York Common Law Reports, 757).    There had been a special act allowing horse races upon certain regulated tracks in Queens County, and exempting parties betting on such races from prosecution under the Penal Code.    There was a wagering contract upon a race upon one of such regulated tracks, and they sought to enforce it in the courts.    The Supreme Court said:  "But wager contracts upon such races have at all times been void since the passage of the Act of 1802.    Parties may bet on races to be run on regulated courses and upon private property in the county of Queens, and such race may be run with absolute impunity.    No offense is thereby committed, nor penalty or forfeiture incurred.    But there is nothing in any of these statutes which makes a wager contract on such race legal, or which will permit it to be enforced in a court of law.    It may be performed if the parties to it think proper to do so; but that is their concern, for at law the contract is void under the very words of the statute, as depending upon a ' race ' and as a ' contingent event.' "

It has been held that the losing party in such an illegal wager upon the result of a horse race, in a county so exempt from the provisions of the Penal Code, may sue the winner and recover back his money so lost. Ruckman v. Pitcher, 1 Comst., 392 (1 N. Y. Rep., 392).

If the contract was void by the laws where it was made, it will not be contended that any validity can be imparted to it by bringing suit upon it in a different forum.

For the errors of the court above indicated, and because the contract sued on was illegal and void, and can not be enforced, the judgment is reversed and here rendered for appellant.

*Reversed and rendered.*