ADOLPH HENSLER, PLAINTIFF IN ERROR, v. ROBERT J.
JENNINGS, DEFENDANT IN ERROR.

Submitted July 11, 1898—Decided November 14, 1898.

1. A wager or bet upon a horse-race is prohibited by the "Act to prevent
   gaming" (*Gen. Stat., p.* 1606), although the race is not to be run in
   New Jersey but in another state.   A stakeholder receiving a deposit
   on such a bet incurs the liability imposed by the provisions of that
   act.

2. A rescission of such a wagering contract by the parties thereto will not
   relieve the stakeholder of the liability imposed by section 2 of that
   act unless the deposit has been returned.   *Quære.* Whether the return
   of the deposit will relieve him from other liabilities under the act.

3. A consent of the loser of such a wager that the stakeholder should pay
   to the winner a part of the stakes deposited, on condition that the
   loser should also be paid a part thereof, which condition the stake-
   holder does not perform, will not relieve him of the liabilities imposed
   by the act.   *Quære.* Whether a payment after the event to the winner,
   upon the unconditional consent of the loser, will relieve the stake-
   holder.

On error to the Essex Circuit Court.   The case was tried
in November, 1897, before Judge Child and a jury, and by
the direction of the court the jury was directed to render a
verdict in favor of the plaintiff and against the defendant, the
stakeholder, for the sum of $500.

For the plaintiff in error, *Samuel Kalisch.*

For the defendant in error, *Edwin B. Williamson.*

VOL. XXXIII.          14

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE.  The record brought here by this writ discloses a declaration in debt, a plea of *nil debet,* a trial of the issue and a judgment upon a verdict in favor of Jennings, the defendant in error, and against Hensler, the plaintiff in error.

The assignments are directed solely at errors alleged to have been committed on the trial.  There is no general assignment nor any directed at the record. ·

The assignments to the refusals of the trial judge to grant a nonsuit or to direct a verdict for Hensler and to his direction for a verdict in favor of Jennings may be conveniently considered together.

The bills of exception show that Jennings had made a bet or wager of $500 with one Meyer upon the result of a horse-race between the respective horses of Meyer and Jennings. The wager was made in New Jersey but by its terms the race was to take place in New York.  Pursuant to the terms of the bet Jennings deposited his $500 with Hensler, who was agreed upon as a stakeholder by the parties, and Hensler received the money in New Jersey.

The action of Jennings was to enforce a liability of Hensler claimed to arise under the provisions of "An act to prevent gaming " (Revision), approved March 27th, 1874.  *Gen. Stat., p.* 1606.

In support of the motion to nonsuit Hensler contended that no liability arose under that act because the event on which the wager was laid was to be decided in another state, and there was no evidence that it was prohibited by the laws of that state.

The act imposes a liability upon a stakeholder by two of its sections.  By section 2, any person who deposits money with a stakeholder upon the event of a wager prohibited by that act or by any law of the state, may sue for and recover the same whether the money has been paid over or the wager has been lost or not.  By section 5, one who loses money upon a wager prohibited by section 1 of the act may sue for

and recover it from the stakeholder whether he has paid it over or not, but such suit must be brought within six calendar months. Both sections give an action of like character against the winner or any person receiving such money for him.

By section 4 of "An act to prevent horse-racing," passed February 15th, 1811 (*Rev. L., p.* 550), a similar action was given to a loser of money bet on a horse-race, but against the winner or his agent only. By section 4 of "An act to prevent gaming," passed February 8th, 1797 (*Rev. L., p.* 267), a like action was given for money lost upon bets upon certain prohibited forms of gaming. The actions in both cases were limited to be brought within six calendar months.

Notwithstanding the provisions of these acts did not impose a liability upon a stakeholder to return money deposited with him upon wagers which were declared illegal by those acts, it was held in the Supreme Court that such money could be recovered from him by the depositor if demanded before payment to the winner. *Moore* v. *Trippe, Spenc.* 263; *Huncke* v. *Francis,* 3 *Dutcher* 55; *Sutphin* v. *Crozer,* 1 *Vroom* 257. The case last cited was brought to this court and reversed. It was here held that after the adoption of the "Act to prevent horse-racing," approved March 19th, 1846 (*Rev. Stat., p.* 369), which made a stakeholder, by accepting the deposit of stakes upon a prohibited bet, guilty of misdemeanor, an action could not be maintained by one of the guilty parties against the stakeholder to recover money illegally staked. *Sutphin* v. *Crozer,* 3 *Vroom* 462.

When the revisers of 1874 came to draft the present act to prevent gaming (*ubi supra*) they made use of the provisions of section 4 of the act of 1797 of a like title, enlarging them so as to include all forms of betting prohibited by section 1 of the act and extending the liability to the stakeholder to answer to the loser of any prohibited bet. It was thus the present section 5 was made up.

By section 2 of a supplement to the act of 1797, approved April 6th, 1871 (*Pamph. L., p.* 109), the same provisions

were adopted which the revisers of 1874 have included, with some extensions and modifications, in section 2 of the present act.

The purpose for which the provisions of both sections relating to stakeholders' liability were included in the act would seem to be to cover a liability to an action for money deposited upon an illegal wager, in case the event on which it was to depend never came off and so the wager was never decided. Such a liability would not arise under section 5, but would under section 2. Perhaps there were other reasons for the inclusion of both provisions.

This review of legislation on this subject seems, however, to be unnecessary, because it appears from the evidence, with the bills of exception, that Jennings' claim was covered by the provisions of both sections, if the wager was one prohibited, for the race was run and Jennings' horse was beaten, and the stakes were paid over to Meyer, the winner, by Hensler, the stakeholder.

Recurring, then, to the contention that Hensler's liability was not established, because the event on which the bet was laid was to come off in another state, it is sufficient to point out that the act in question does not prohibit horse-racing. Such prohibition is contained in other legislation. But the provisions of section 1 of this act make unlawful and therefore prohibit all wagers upon any race. A race elsewhere, and whether prohibited by the laws of the place where it is run or not, is within the plain language and intent of the act, and a wager on such a race is prohibited. A like construction was given to similar language of the Crimes act (*State v. Lovell*, 10 *Vroom* 463), and no other construction is reasonable.

The nonsuit was therefore properly refused.

The request for a direction for a verdict in favor of Hensler was pressed upon the trial judge on the single ground that the evidence, as it then stood, established the fact that Jennings and Meyer had rescinded the original illegal wagering contract made in this state, and had thereafter, and in the

State of New York, made another contract by which each wagered $500 upon the result of a race to be there run between the same horses, and, in the absence of proof that such a contract was prohibited in New York, this action could not be maintained.

The trial judge held that the evidence was insufficient to establish a rescission of the illegal contract made in this state, and I entirely concur in his conclusion.

But it is now contended that there was evidence of such rescission sufficient to go to the jury, and that it was error to direct a verdict for Jennings, because, if the jury had found such rescission, the action was not maintainable.

But I am unable to yield to this contention. We are not called upon to determine what would have been the effect of a return to Jennings of the money he had deposited, after a rescission of the illegal wager by him and Meyer. The case shows that the money was not returned. The liability of Hensler, under section 2 of the act in question, arose immediately upon his reception of the stakes upon the illegal wager, and, by the express terms of that section, continued to exist whether the wager was lost or not. That liability was not destroyed by a rescission of the illegal contract whereby the event on which the wager was made did not come off, at least unless the deposit was returned.

It is not intended to intimate that a return of the deposit will of itself relieve from the liability imposed by the act. As we have seen, an action is given to the loser of an illegal wager to recover of the stakeholder his deposit. But, by section 6, if such an action is not brought by the loser, " really and *bona fide* and without covin or collusion," within the limited six months, any person may, within a further period of six months, sue for and recover such deposit, one-half for his own use and the other half for the use of the state. The statute seems designed to put a stakeholder in peril of a statutory liability, independent of any contract express or implied, and it may be that when the question comes to be considered it will be necessary to hold that a stakeholder's liability will

not be discharged, except upon a payment made to the loser after he brings such an action as the act contemplates.

The result is that the verdict in favor of Jennings was properly directed and must be sustained unless there was error in the refusals to leave certain questions to the jury, which are the subject of other assignments.

The trial judge was requested to charge that if the contract of wager was made, not in New Jersey but in New York, there could be no recovery. His refusal was excepted to and is now assigned for error.

The observations already made dispose of this objection, for Hensler's liability had arisen upon his reception of a deposit on an illegal contract of wager, and the fact that the wager on which the race was finally run was made in New York did not satisfy or avoid that liability.

There was a further request to charge that if the jury believed that Hensler was requested by Jennings to pay over to Meyer $400 out of the $500 deposited by Jennings, and did pay Meyer in pursuance of that request, there could be no recovery for that sum. The refusal to charge this request was excepted to, and the exception is the subject of the remaining assignment of error.

The evidence on which this request was predicated was this : By the terms of the wager the stakes were to be deposited by a fixed time, under a penalty of a forfeiture of a part of the deposit. Before the race was run Jennings claimed $200 as a forfeiture due him under those terms. After the race was won by Meyer there was evidence that Jennings consented that Hensler should pay Meyer $800 of the money deposited as stakes, provided Hensler paid him the $200 claimed by him as a forfeit. Hensler refused to pay Jennings anything, and paid the whole $1,000 to Meyer. Upon this evidence the trial judge properly refused to charge as requested, on the ground that it would not justify the jury in finding a request or consent for the payment of the $800. Having refused to perform the condition on which Jennings'

consent was given, Hensler could not claim that Jennings' conduct operated either as consent or request.

In announcing my concurrence with that conclusion, I desire to state explicitly that I do not concede that if Jennings had expressly consented to or requested the payment of the whole stakes to Meyer that Hensler would have been exonerated from liability. As I read the evidence, the race in New York was that which was the subject of the wager in New Jersey. When Jennings deposited his money with Hensler upon such a wager he gave such consent as he could that, should Meyer win the race, Hensler should pay over the stakes to him, yet that consent was absolutely inoperative to relieve Hensler from the statutory liability imposed by the act. The purpose of the act was to make the acceptance of stakes upon unlawful wagers *ipso facto* impose the liability. It would thwart its declared purpose to hold that, by a consent given after the event on which the illegal wager was made has been decided, the stakeholder can be shielded from liability by paying the stakes to the winner. Such was the view taken upon a similar statute by the Court of Appeals in New York. *Ruckman* v. *Pitcher*, 1 *N. Y.* 392; *Storey* v. *Brennan*, 15 *N. Y.* 524. In *Ruckman* v. *Pitcher*, 20 *N. Y.* 9, that court declined to reconsider the former decision.

None of the assignments pointing to any error, I shall vote to affirm the judgment below.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, DEPUE, GARRISON, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON. 11.

*For reversal* — COLLINS, DIXON, VREDENBURGH. 3.