threatening foreclosure. The report of the referee and the order confirming it recite the appointment of the referee. The deputy county clerk testified that there was no order of reference in the clerk's office and no record of the entry of such order. The attorney for the petitioner in said proceeding testified:

"I prepared a paper, which would have been an order of reference, had it been entered, and gave it to Mr. Lockwood [the latter was the referee]. * * * I never saw that paper signed by a judge of the Supreme Court."

We need spend no time on the proposition that a proceeding in derogation of the common law to sell an infant's real property depends for its validity on a strict compliance with the terms of the statute authorizing it. If there was no order of reference, the proceeding was absolutely void, and the proof on that point is the only question now involved. The respondent urges that the recitals in the order confirming the report of the referee furnish presumptive evidence in proof of the order. I do not think we need to determine now to what extent such presumption could be indulged, or whether the burden was upon the defendant to show compliance with the statute, because it seems to me that whatever probative force the recitals may be entitled to is overcome by the testimony of the attorney who had charge of the matter, and the only fair inference from his testimony is that he never made application to the court for the order of reference. He tells what he did. That was to prepare a paper and hand it to the alleged referee. It would not have been proper for him to have suggested to the court the referee to be appointed; much less could he prepare a proposed order and leave it to the referee named therein to have himself appointed. The referee evidently assumed that the paper handed him was in fact an order granted by the court, and that accounts for the fact that no such order is found in the papers on file.

I think this view makes further consideration of the case unnecessary, and requires the conclusion that the purchaser was not bound to accept the title offered.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide event. All concur, except Hirschberg, P. J., and Hooker, J., who dissent.

---

(118 App. Div. 35)

## MURRAY v. INTERURBAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

DAMAGES—PERSONAL INJURIES—MEASURE OF DAMAGES—LOSS OF EARNINGS.
The amount earned by one while working for a bookmaker in placing bets on horse races, in violation of Pen. Code, § 351, immediately prior to an accident resulting in his personal injury incapacitating him from continuing in such work, cannot be considered in fixing the amount of his damages.

Appeal from Trial Term, Kings County.

Action by William S. Murray against the Interurban Street Railway Company. From a judgment for plaintiff, and from an order deny-

ing a motion for a new trial, defendant appeals. Judgment and order reversed, and new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and SCOTT, JJ.

Henry A. Scheuerman, for appellant.
Thomas D. Adams, for respondent.

McLAUGHLIN, J.   On the 11th day of September, 1902, between 5 and 6 o'clock in the morning, the plaintiff was a passenger on one of the defendant's south-bound Third Avenue cars.   He took the car at Forty-Second street, and as it approached Twenty-Sixth street he testified he indicated to the conductor a desire to get off at that point; that in obedience to the information thus imparted the car was brought to a standstill at Twenty-Sixth street, and, while he was in the act of getting off, it was suddenly started, he was thrown to the street, and one of the wheels of the car ran over his foot, cutting off three toes; that he was taken to the hospital, where he remained between five and six months, and thereafter was compelled for a period of some eight or nine months to use crutches; that from that time down to the time of the trial he had been unable to render the service which he did immediately prior to the accident; and. in addition to the injuries complained of he alleged, by way of special damage, that prior to the accident he was earning in his occupation $70 a week, and which sum by reason of his injuries, he had been unable to earn from the time of the accident to the time of the trial.   At the trial the plaintiff was permitted to prove, against the objection and exception of defendant, that immediately prior to the accident he was employed by a bookmaker at a salary of $70 a week, and his duties consisted in placing bets on horse races, which work necessitated activity upon his part, and at times he had to run from one bookmaker to another to ascertain the rates upon the horses, and to place the bets.   In submitting the case to the jury, the learned trial justice was requested to charge that the jury could not take into consideration, for the purpose of fixing damages, the amount claimed to have been earned by the plaintiff while working for the bookmaker, inasmuch as that work was in violation of section 351 of the Penal Code, which prohibits gambling, betting, etc.   The request was refused, and an exception taken.

I am of the opinion there was sufficient evidence to go to the jury upon the question of defendant's negligence, as well as the contributory negligence of the plaintiff, but that the court erred in refusing to instruct the jury, as requested by defendant's counsel, that it could not consider, as fixing the amount of damage, the wages paid by the bookmaker to the plaintiff in placing bets.   The plaintiff, according to his own testimony, was violating the law, and, when a person is committing a crime, he cannot use the wages paid to him for doing it as the basis for a recovery in a civil action.   Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 118, 5 L. R. A. 340, 12 Am. St. Rep. 819.   No one would contend that, if a pickpocket should have his hands cut off by the negligence of another, the amount which he realized in that pursuit prior to the injury could be used as the basis of damage; nor would any one contend that a burglar, if injured by the negligent act of an-

other, which prevented his following his criminal career, could use the amount which he had theretofore realized as the basis of a recovery. And yet in either instance they might just as well be resorted to as the evidence admitted in the case before us. In each case the person would be engaged in doing acts which the statute prohibits, and, while they would be different degrees, they would be criminal, nevertheless. What a person earns in committing a crime can never be used as the basis of a recovery for an illegal act inflicted by another. The law does not permit proof of its violation for the purpose of enriching the pockets of the violator.

It follows, therefore, that the exception to the refusal to charge as requested was well taken, and the judgment and order appealed from must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.