MICHAEL T. WATTS, Respondent, *v.* JOHN B. MALA-
TESTA, Appellant, Impleaded with Others.

(Argued April 12, 1933; decided May 23, 1933.)

*John E. Mack, William H. George* and *Frederick S. Lyke* for appellant.

*Hugh B. Archer, John Caldwell Myers* and *John F. Keating* for respondent.

CROUCH, J. The action is under section 994 of the Penal Law to recover money paid by plaintiff to defendant upon the event of prohibited wagers or bets. Plaintiff proved conclusively that on divers dates and occasions from April 28, 1928, to April 17, 1930, he had paid defendant, a bookmaker, various sums of money aggregating $37,535 for wagers lost upon a series of horse races. The defendant adduced evidence which, it may be assumed, warranted a finding that during the same period defendant lost and paid to plaintiff like wagers aggregating a much larger sum. It was the contention of the defendant, under a pleaded counterclaim, that he was entitled to recover from the plaintiff a sum equal to the excess of the total amount lost and paid by him to the plaintiff over the total amount lost and paid by the plaintiff to him. That contention, accepted by the trial court, was rejected by the Appellate Division. Plaintiff was granted judgment for the entire amount of the wagers lost and paid by him to the defendant. As matter of law, the judgment was right.

Under the evidence and for the purpose of this case, plaintiff must be regarded as a casual, and the defendant as a professional gambler. " The statute against betting and gaming was enacted as a protection of the public morals. The intention of the legislature was to discourage and repress gambling in all its forms, and the law * * * is to be construed so as to accomplish, *so far as possible, the suppression of the mischief against*

*which it was directed.*" (*Luetchford* v. *Lord*, 132 N. Y. 465, 469, citing *Ruckman* v. *Pitcher*, 1 N. Y. 392, 396, and *Storey* v. *Brennan*, 15 N. Y. 524, 527.) But casual betting or gaming by individuals as distinguished from betting or gambling as a business or profession, is not a crime. (*People* v. *Stedeker*, 175 N. Y. 57; *People* v. *Bright*, 203 N. Y. 73; *People ex rel. Collins* v. *McLaughlin*, 128 App. Div. 599.) The distinction between the two species has long " obtained in this state where ordinary betting has never been made a crime   *   *   *   while the keeping of a gambling house, selling lottery tickets and the profession of a common gambler have been subjected to severe punishment." (*People* v. *Stedeker*, *supra*, p. 62.) Discouragement of casual betting has never gone beyond the point of making recovery by a winner impossible upon default by the loser (Penal Law, §§ 991 and 992); and of compelling return to the loser of voluntary payments made by him. (Penal Law, §§ 994 and 995.) Attack or defense in a civil action has been regarded as adequate — " as one of the best and surest means " (*Ruckman* v. *Pitcher*, *supra*, p. 405) — for the suppression of that kind of betting. The evil which the law chiefly condemns (N. Y. Const. art. I, § 9) and makes criminal (Penal Law, art. 88) is betting and gambling organized and carried on as a systematic business. The reason seems obvious. Curb the professional with his constant offer of temptation coupled with ready opportunity, and you have to a large extent controlled the evil.

It is clear that in the eye of the law the professional gambler and his customer do not stand on the same plane. They are not *in pari delicto.*

To argue, therefore, that the Legislature, by using the phrase " any person " in section 994 of the Penal Law, intended to confer a right upon the professional to recover his losses from his customer, is unconvincing. Under such a construction, a criminal act would give rise to a cause of action. That cannot be the law. (Cf. *Riggs*

v. *Palmer*, 115 N. Y. 506; *Murray* v. *Interurban Street Ry. Co.*, 118 App. Div. 35.) By no possibility could such a construction tend, as we have said it should, to " the suppression of the mischief against which it [the statute] is directed."

But it is urged that in any event the defendant, a professional specializing in the field of bookmaking, may offset his losses against the plaintiff's claim. How may that be, if he has no cause of action at all? To permit it would be to permit *pro tanto* what the law denies *in toto*. Nowhere in the statute is there any indication of an intent to afford a *locus pœnitentiæ* to the professional. Quite the contrary. Whatever his shape may be, he is an outlaw. Moreover it is to be remembered that the right of recovery given by statute to the casual gamester is not intended to benefit him, but to put teeth in the prohibition against all betting.

As a precedent for the theory of offset, however, there is pressed to our attention the case of *Elias & Shepherd* v. *Gill* (92 Ky. 569). The compromise involved in that decision is a sporting one, and on that ground admirable. We think it can be sustained on no other, and prefer to follow *Lyons* v. *Coe* (177 Mass. 382), which dealt with an analogous, if less ambiguous, statute.

The judgment should be affirmed, with costs.

CRANE, J. (dissenting). The plaintiff and the defendant are two gamblers, the defendant being a bookmaker at the race tracks, and the plaintiff placing his bets on the races with the defendant through himself and his betting agent. These transactions covered the period between April 27, 1928, and May 28, 1929, during which time the plaintiff won nearly $250,000, and had lost about $150,000. His gains over losses were about $100,000. All the money he won was paid to him. He now brings this action under section 994 of the Penal Law to recover his losses but makes no offer to repay his winnings — these he wants to keep.

In his complaint he alleges that between the dates stated he paid to John B. Malatesta $37,773 as his wagers upon horse races at the Belmont track, the Jamaica race track and the Empire City race track; that having lost, he demanded back his money which the defendant failed to pay. Mind you, he sues to recover no single bet, nor does he even state or prove what the wagers were as made. He lumps his demands for a year's betting and asks for the total; he treats the transactions as a running account.

The defendant in his answer admits that between the dates mentioned he and the plaintiff entered into a series of wagers upon horse races but denies that the plaintiff's losses have not been repaid. He further alleges, as a counterclaim, the fact that he paid the plaintiff $95,938, his winnings at the track over and above the losses, and demands judgment for its return.

At the trial the complaint was dismissed and the defendant was awarded judgment on his counterclaim. The Appellate Division reversed the judgment and gave judgment for the plaintiff, dismissing the counterclaim. The result in my judgment is that both parties should have lost; that neither should have recovered from the other; that they were *in pari delicto* and that section 994 never intended that a person who makes a wager may sue for and recover the same, although he may at the same time keep all his own winnings made in the same course of transactions more than sufficient to meet his losses.

Section 991 reads as follows: "All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful."

Section 992 reads: "All contracts for or on account of any money or property, or thing in action wagered, bet

or staked, as provided in the preceding section, shall be void."

The plaintiff could not have recovered his *winnings* from the defendant. He would have no standing in court, for the law refuses to recognize gambling debts or afford the winner any relief. (*Meech* v. *Stoner*, 19 N. Y. 26.) The Revised Statutes (1 R. S. p. 662), the forerunner of section 994 of the Penal Law, permitted a recovery of his *losses.*

When, however, the plaintiff, under section 994, seeks to recover what he has lost, at the same time having in his possession and having received from the defendant more than sufficient to cover such losses, all coming out of the same course of transactions, the court should afford him no relief. Section 994 of the Penal Law was never intended to cover such a case. Instead of discouraging gambling and bookmaking, which is the purpose of the law, such a result would do the very reverse by encouraging people to wager on horse races with a bookmaker whose money they could legally take, and then recover all that they may have lost in the same afternoon. The very purpose of section 994 is thus nullified.

This was the view taken of a similar statute by the Supreme Court of Kentucky in *Elias & Shepherd* v. *Gill* (92 Ky. 569). The Kentucky statute, like our Revised Statute (1 R. S. p. 662), provides (General Statutes, ch. 47, art. 1, § 2) that "if any person shall *lose to another* at one time or within any twenty-four hours, five dollars or more  *  *  *  and shall pay  *  *  * the same, such loser or any creditor of his may recover the same  *  *  *  from the winner  *  *  *  by suit brought within five years after the payment."

Under this statute it was held that where one sought to recover of pool sellers on horse races the money which had been lost in wagering, the pool sellers were entitled to deduct from the amount lost or paid to them the sum

which they had paid and which the person laying the wager had won. The court said: " But while it is true appellants could not, by an original action, have recovered any part of the amount lost in their own pool-rooms to appellee, nor are entitled to judgment even on their counter-claim, still, whatever amount or amounts they lost to him on account of wagers between them on horse races at the dates or within the period mentioned in the petition, should be set off against or deducted from what he may be entitled to recover in this action. For certainly it was not the intention of the Legislature to afford to a party voluntarily buying pools on horse races, or betting at a faro-bank, the undue advantage of recovering back what he may have lost to the seller or dealer, without disgorging and accounting for what he won from him. The purpose of the statute was to afford to such party remedy to the extent of his actual loss, not to enable him to recover back what he lost, while keeping and profiting by what he won from the defendant. It therefore seems to us clear that the criterion of the amount appellee is entitled to recover, if any at all, is the excess of what he lost to appellants above what he won from them during the period mentioned; and at the trial the burden should be on him to show the amount of his losses to appellants, subject to reduction or set-off by the amount he won from them."

This is the exact situation in the case now before us. Our section 994 of the Penal Law likewise was never intended to enable a better on horse races to profit by his losses. In interpreting our laws, we must have in mind as a fundamental principle the evils which they are sought to prevent and not so construe them as to create greater evils.

My associate, Judge CROUCH, is of the opinion that the plaintiff and the defendant are in different positions because the defendant has committed crime, being a bookmaker. In this I think he is mistaken. He cites

for authority *Riggs* v. *Palmer* (115 N. Y. 506, 511), which held that a beneficiary, under a will, could not recover his benefactions where he had murdered the testator in order speedily to come into possession of the estate. The rule, however, that one may not profit by his own wrong is not confined to criminal acts. It applies equally to those who have done wrong, not amounting to crimes, such as acting contrary to public policy. " No one," said the court, " shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." Thus, in *Attridge* v. *Pembroke* (235 App. Div. 101, 102), it was held that a mutual agreement that if the plaintiff would terminate and break her engagement to marry her *fiancé*, the defendant, a third party, would pay her a sum of money, is void, as against public policy, for it bound the plaintiff to do an illegal act. " It is not necessary," said the court, " to plead the illegality of a contract which is contrary to public policy; the court will, of its own motion, step in and deny the right to any relief thereunder without reference to the state of the pleadings, whenever it becomes apparent that the agreement is antagonistic to the interests of the public."

In *Continental Wall Paper Co.* v. *Voight & Sons Co.* (212 U. S. 227) it was held that a vendor could not recover for the price of wall paper sold and delivered, as to enforce the claim would be to aid in the execution of an agreement in restraint of trade. (See, also, *Morgan Munitions Co.* v. *Studebaker Corp.*, 226 N. Y. 94.) The rule, therefore, was not confined to one who was a criminal. No one could recover on a contract which was contrary to the public policy of the State.

The position, in this particular, of the plaintiff and the defendant at common law was the same. Neither could recover losses sustained upon a wagering contract. Both were equally barred from the courts and the position of

the man who bet was no better than the criminal who was a common gambler. The plaintiff in this case by betting on the horse races was acting contrary to the public policy of this State, as evidenced by the provisions of the Penal Law, above cited, and article I, section 9, of the Constitution of New York. When, therefore, section 994 of the Penal Law and its predecessor, the Revised Statutes (1 R. S. p. 662), removed this ban so as to permit *any person* who shall pay money upon the event of *any wager* to recover the same, it applied to the bookmaker as well as to the better. The statute makes no exceptions. Both were equally barred by the common law as equally culpable and when the prohibition was removed both were afforded equal rights, not for their own sakes, but for the benefit of the public. Personally, I believe that the defendant in this case has as much right to recover on his counterclaim as the plaintiff has to recover his losses. Both come under section 994 of the Penal Law. But at least I am convinced that the defendant having paid the plaintiff his winnings, is entitled to have them considered as repayment of the losses.

The remedy, under section 994 of the Penal Law, is not confined to those who bet with professional gamblers or with bookmakers at race tracks, but applies also to to those who bet at poker or on the result of elections. The loser may always sue to recover back his lost wager. This he could not do at common law. Betting was illegal, or, as stated by Judge CULLEN in *People* v. *Lambrix* (204 N. Y. 261, 264), "All gambling has for a long time been illegal in this State." The Constitution (Art. I, § 9) has enacted that no kind of gambling shall be authorized or allowed within this State. Prior to these provisions of the Revised Statutes, followed by section 994 of the Penal Law, the loser could not maintain an action to recover his losses because, having participated in an illegal act, the courts would not aid him. It left the parties in the position in which it found them. This court said in

*Meech* v. *Stoner* (19 N. Y. 26, 27): " If the statute had not given an action to recover money lost at play, it is quite certain that on the general principles of law a suit for such a purpose could not be maintained. The winner's exemption from suit and recovery would not result, however, from any title in himself to the money or thing won and received by him. On the contrary, the whole transaction being unlawful, he is bound in conscience to make restoration, and would be bound in law to do so, but for a peculiar maxim having the force of law, and according to which the courts withhold their remedial processes from each of the offending parties. *'In pari delicto potior est conditio defendentis,'* is the rule in such cases; but this is a rule which acknowledges no just or legal title in the defendant. It assumes, on the other hand, that the money or thing in his possession has been acquired in violation of the law, and it then denies a remedy to the other party because he has been an equal sharer in the same offense. Thus the parties are left where the law finds them, and the defendant prevails, not upon his own merits or title, but because the plaintiff is deemed unworthy to be heard in the particular case. ( *Nellis* v. *Clark*, 20 Wend. 24, and cases cited; S. C. in Court of Errors, 4 Hill, 424.) "

The purpose of section 994 was merely to restore — to put the party back in the same position as if he had never parted with his property, to disregard the wager as an illegal act and to give the bettor that which he had lost, or, in the words of the decisions, that which the winner wrongfully kept. The statute, however, never intended to go further than this, or to permit one to profit out of his wrong, recover not only what he has lost, but also keep all that he has won. As above stated, to permit him to do this is to afford a rare opportunity for adventure or extortion, or betting on a " sure thing."

While the law prohibits bookmaking and makes it a criminal offense, it also provides the punishment.

Although the bookmaker may be subject to this punishment, he is not to be made the victim of frauds and cheats. One cannot steal from a bookmaker simply because he is a bookmaker. He has his remedy in court. When, therefore, the law allows the loser to recover from the bookmaker the money he has lost, it does not or should not permit the better to also keep what he has won from the bookmaker.

The purpose of section 994 of the Penal Law was to prevent under the mandate of the Constitution all forms of gambling. It was not aimed at professional gambling or against bookmakers or poolsellers; it was aimed at any person who gambles. This court, therefore, in construing this statute, should not deal with it as one in aid of the loser, but construe it in such a way as to aid in the purpose of the Legislature to stop, and not encourage betting. No surer way can be devised to encourage the gambling instinct than to say to these semi-professional gamblers like the plaintiff, " You can risk all your money on the horses and, if you lose, recover it back. If you win, you need never pay back." This makes a sure thing of this form of gambling. A gambler like the plaintiff can always win and never lose. Such a construction of this statute is to defeat its very purpose and resurrect that which the law has buried. We are at least in harmony with the intentions of the Constitutional Convention and of the Legislature when we hold that while the loser may recover from a bookmaker at the race track his losses, he cannot recover more, and if the bookmaker in the same course of transactions has paid winnings equal to the amount of the losses, the plaintiff or the better has suffered no loss. " It is the function of the court to construe the statute, not to defeat it as construed. * * * To construe statutes so as to avoid absurd or glaringly unjust results, foreign to the legislative purpose is, as we have seen, a traditional and

appropriate function of the courts." (*Sorrells* v. *United States*, 287 U. S. 435, 449, 450.)

There is another ground for holding that this plaintiff cannot recover. The reason he recovers at all is because under the statute the bet is illegal (§§ 991, 992). Section 991 says that all bets upon a race are unlawful and that all contracts for money wagered shall be void. The money paid by the bookmaker to the plaintiff was on a void transaction. The plaintiff is not entitled to it. It is not his money. In the eyes of the law it is money had and received which he should pay back. The plaintiff still has money which belongs to the defendant. There is nothing I know of in the law which prevents this defendant from pleading that the plaintiff has been paid in full. Even if the bookmaker may not be able to recover back his money (which I doubt) he is fully authorized when sued to set up any defense known to the law. He has proved payment by showing that the plaintiff has received more than he gave.

I, therefore, am for reversal, the dismissal of the complaint and of the counterclaim, basing my opinion upon these two grounds: (1) Section 994 of the Penal Law was never intended to cover a case like this which would permit a bettor to recover all his losses without offsetting his winnings, and (2) for the reason that the winnings, growing out of the same course of transactions, amount to a repayment of the losses.

POUND, Ch. J., KELLOGG and O'BRIEN, JJ., concur with CROUCH, J.; CRANE, J., dissents in opinion in which LEHMAN, J., concurs; HUBBS, J., not sitting.

Judgment affirmed.