In the Matter of Kɪᴘ Cʏᴘʀᴜs et al., Copartners Doing Business under the Name of Kɪsᴍᴇᴛ Bᴇᴀᴜᴛʏ Sᴀʟᴏɴ, Petitioners, against Nᴇᴡ Yᴏʀᴋ Tᴇʟᴇᴘʜᴏɴᴇ Cᴏᴍᴘᴀɴʏ, Respondent.

Supreme Court, Special Term, Queens County, July 7, 1948.

*Nathaniel Feinstein* for petitioners.

*Ralph W. Brown, Irving W. Young* and *Martin B. Stecher* for respondent.

·Hᴀʟʟɪɴᴀɴ, J.   Application pursuant to article 78 of the Civil Practice Act, for an order directing respondent to restore telephone service to the petitioners.

Petitioners are the owners and operators of a beauty parlor, the reasonable value of which they allege to be $25,000.   Because of the nature of their business, most of their patrons come to the premises by appointment and at least 90% of these appointments are made by telephone.

On January 21, 1948, police officers, pursuant to a court order, tapped petitioners' telephone and allegedly ·heard bets being placed over said phone.   They entered the premises, arrested the

petitioners, and removed the telephone equipment. After a hearing in the Court of Special Sessions petitioners were acquitted. They have requested restoration of their telephone service, but respondent has refused to reinstall a telephone because it is "not satisfied that if the telephone service applied for were installed it would not be used for bookmaking and gambling on horse races."

In opposition to this application respondent has submitted a copy of a letter from the petitioners, dated April 20, 1948, requesting restoration of service. Respondent claims that this letter contained an admission by petitioners that they were using the telephone for bookmaking purposes. That part of the letter reads as follows: "We realize we had made a mistake in using our phone *to bet on the races,* and for this mistake we have paid very deeply but it had taught us the best lesson we could hope to learn." (Italics supplied.)

There is a vast distinction between betting on the races and booking bets. In *Watts* v. *Malatesta* (262 N. Y. 80, 82) the Court of Appeals said: "But casual betting or gaming by individuals as distinguished from betting or gambling as a business or profession, is not a crime. [Citing cases.] * * * The evil which the law chiefly condemns (N. Y. Const. art. I, § 9) and makes criminal (Penal Law, art. 88) is betting and gambling organized and carried on as a systematic business. * * * It is clear that in the eye of the law the professional gambler and his customer do not stand on the same plane. They are not *in pari delicto.*" Manifestly, respondent has misinterpreted petitioners' letter. It contains no admission of any illegal act. If placing a bet is not illegal, it does not become so because made over the telephone. In *People ex rel. Restmeyer* v. *New York Tel. Co.* (173 App. Div. 132, 133–134) the court said: "Speaking generally, the telephone company is bound to furnish service to all who pay its proper charges and obey its reasonable regulations, but it is not required to furnish such service to those *who are reasonably sure* to use it for an illegal purpose." (Italics supplied.)

It is thus evident that respondent may deny telephone service to a customer, only when it is reasonably sure that it will be used for an illegal purpose in the future. It has no authority to deny telephone service as a punishment for past crimes. Presumably the criminal court inflicts punishment commensurate with the crime, and no other punishment should be meted out by private organizations.

In the instant case petitioners have been without telephone service for approximately six months and have suffered a great loss in business. They allege that their receipts have decreased 75%. It is highly unlikely that they will hereafter use their telephone, even to place bets, much less to accept them. We can be reasonably sure that they will not jeopardize their business or their investment therein by illegal use of the telephone. As they, themselves, say in their moving papers: " If assuming, without conceding, that deponents have been guilty of a violation, which they were not, certainly being without a telephone for six months would be enough of a penalty, so that even a moron would never again use his phone for an illegal purpose."

Under all the circumstances the application is granted. (*Feldman* v. *Wallander,* 67 N. Y. S. 2d 395; *Salter* v. *New York Tel. Co.,* 67 N. Y. S. 2d 396; *Matter of Knapp* v. *New York Tel. Co.,* N. Y. L. J., June 18, 1948, p. 2313, col. 3; *Matter of Di Benedetto* v. *New York Tel. Co.,* N. Y. L. J., July 6, 1948, p. 28, col. 2.)

Submit order.