87 N.Y.2d 441 (1995)
663 N.E.2d 588
640 N.Y.S.2d 432
The People of the State of New York, Respondent,
v.
John Giordano, Joseph Giordano and Philip Cestaro, Appellants.
Court of Appeals of the State of New York.
Argued November 30, 1995
Decided December 28, 1995.
Richard A. Rehbock, New York City, for appellants.
Denis Dillon, District Attorney of Nassau County, Mineola (Lawrence J. Schwarz and Peter A. Weinstein of counsel), for respondent.
Judges BELLACOSA, SMITH, LEVINE and CIPARICK concur with Judge SIMONS; Judge TITONE dissents and votes to reverse in a separate opinion in which Chief Judge KAYE concurs.
*444 SIMONS, J.
This is a gambling prosecution involving three bookmakers. They operated primarily in Manhattan but they frequently *445 "hedged" or "laid off" bets in Nassau County through an accomplice named Rothman. Following a joint trial, each was convicted of four counts of promoting gambling in the first degree and one count of conspiracy in the fifth degree. On appeal, a divided Appellate Division dismissed the conspiracy count and otherwise affirmed.[1]
The principal issues before us are (1) whether Nassau County had geographical jurisdiction to prosecute defendants when the only conduct there consisted of telephone calls from Manhattan hedging bets made in Manhattan and (2) whether the convictions for promoting gambling must be reversed because of the trial court's instructions on jurisdiction. We conclude there should be an affirmance.

I
Defendants John Giordano, Joseph Giordano and Philip Cestaro, along with Bernard Rothman, conducted a bookmaking operation in Manhattan. The Giordano brothers managed the business and Rothman worked for them. Cestaro was a runner. On several occasions in the spring of 1989, Rothman placed telephone calls from Manhattan to the "Meacham" bookmaking operation in Nassau County to "hedge" or "lay off" bets placed in Manhattan. He did this when bets received by the Manhattan operation were not evenly placed against the two teams in a particular sporting event and it became necessary for defendants to shift their risk of loss by placing bets on the favored team with another bookmaking operation. In that way, if the Manhattan bettors won, defendants would also win on the hedge bets they had placed in Nassau County or elsewhere and they would thus have a source of funds to pay the Manhattan winners.
Following trial the jury found that defendants promoted gambling in the first degree and conspired to promote gambling *446 in the fifth degree and the court sentenced them to fines and terms of incarceration.

II
The State Constitution and the common law provide defendants with the right to be tried in the county where the crime was committed unless the Legislature has provided otherwise (People v Ribowsky, 77 N.Y.2d 284, 291; People v Moore, 46 N.Y.2d 1, 6; NY Const, art I, § 2). The burden rests on the People to establish geographical jurisdiction by a preponderance of the evidence (People v Ribowsky, 77 NY2d, at 291-292, supra). To establish jurisdiction on the promoting gambling counts here, the People invoked the statutory provision which establishes a county as the proper venue when the defendant, either directly or by an accomplice, engages in conduct "within such county sufficient to establish * * * [a]n element of such offense" (CPL 20.40 [1] [a]; People v Tullo, 34 N.Y.2d 712, 714; see also, People v Guidice, 83 N.Y.2d 630, 635-636).
Defendants contend, however, that promoting gambling in the first degree has only one element, knowingly advancing or profiting from unlawful gambling activity by engaging in bookmaking, and that Nassau County lacked geographical jurisdiction to prosecute them because there was no proof that they accepted bets, i.e., engaged in bookmaking, in Nassau County (see, Penal Law § 225.00 [9]). We conclude that advancing or profiting from unlawful gambling activity is a separate element of promoting gambling in the first degree and, if established by the evidence, could support jurisdiction in Nassau County.
Article 225 of the Penal Law sets forth a framework establishing two promoting gambling offenses and various other gambling-related offenses. Under the statutory scheme a mere "player" or bettor is not criminally liable but one who, in some capacity other than as a player, participates in any gambling enterprise or activity is guilty of a crime. The basic inquiry in each case is whether the game or scheme in issue constitutes gambling and whether defendant's conduct is other than as a player.
The core crime, section 225.05, provides that a person is guilty of promoting gambling in the second degree when "he knowingly advances or profits from unlawful gambling activity." A person "advances gambling activity" when, acting as other than a player, he engages in conduct which materially *447 aids any form of gambling activity (Penal Law § 225.00 [4]). The statute identifies various types of conduct which may constitute gambling activity, including conduct "toward the arrangement of any of its financial or recording phases", and concludes with the catchall phrase referring to conduct directed "toward any other phase of [a gambling] operation." Section 225.05 imposes misdemeanor liability for the entire spectrum of gambling activity, and is augmented by section 225.10 which criminalizes specialized kinds of felonious bookmaking and policy activity not included within it (see, Staff Notes of New York State Commission on Revision of Penal Law and Criminal Code, McKinney's Spec Pamph [1964]). The article also sets forth various possessory offenses (see, e.g., Penal Law §§ 225.15, 225.30).
Section 225.10 is structured to incorporate the exact language of section 225.05 as its initial element of advancing gambling activity, and then adds two subdivisions identifying additional elements which enhance the crime to first degree. Manifestly, second degree promoting, as defined in section 225.05, is a lesser included crime of first degree gambling, as set forth in section 225.10, and, on the record before us, defendants could have been prosecuted for it in Nassau County. Indeed, defendants requested that the court instruct the jury that it was a lesser included offense.
The language of section 225.10 requiring interpretation here provides:
"A person is guilty of promoting gambling in the first degree when he knowingly advances or profits from unlawful gambling activity by:
"1. Engaging in bookmaking to the extent that he receives or accepts in any one day more than five bets totaling more than five thousand dollars; or
"2. * * *"
The opening paragraph and subdivision (1) describe different conduct; the use of the word "by" in the statute to define how the enhanced liability obtains does not, as defendant maintains, collapse two elements into one. One "advances gambling" activity by engaging in any conduct which materially aids a gambling operation (Penal Law §§ 225.05, 225.00 [4]), in this case by hedging bets. Thus, Rothman's conduct constituted promoting gambling in the second degree, necessarily establishing his commission of the first element of the first degree crime. *448 His liability was raised to the felony level because he engaged in bookmaking as a business.
To read Penal Law § 225.10 (1) as a one element crime, "advancing unlawful gambling by bookmaking", would make the statute redundant and render the language in the opening paragraph surplusage. That paragraph holds defendant guilty of promoting gambling when he "advances gambling activity", but "bookmaking" is defined as "advancing gambling activity by unlawfully accepting bets" as a business (see, Penal Law § 225.00 [9]). Accordingly, the statute would have no different meaning if the opening language were excised from it as defendants would do. Under well-established principles of interpretation, effect and meaning should be given to the entire statute and "`every part and word thereof'" (Sanders v Winship, 57 N.Y.2d 391, 396). We should assume the Legislature had a purpose when it used the phrase "advances or profits from unlawful gambling activity" in the first paragraph and avoid a construction which makes the words superfluous (see, Matter of Branford House v Michetti, 81 N.Y.2d 681, 688). These rules of statutory construction lead us to conclude that the opening language of the statute and that of subdivision (1) address two distinct types of conduct, and must therefore be two elements of the crime. Indeed, the statute, far from encompassing only one element, promoting gambling by bookmaking, as defendant maintains, includes four: not only the elements of bookmaking and advancing unlawful gambling, but also receiving five or more bets totalling more than $5,000 on a given day and knowingly profiting from the bookmaking operation when the bets are received (see, 3 CJI[NY] PL 225.10 [1], at 1862-1865).
Thus, we conclude that conduct advancing gambling activity and engaging in a bookmaking business are two separate elements. If conduct establishing one of these two elements occurred in Nassau County, that County had jurisdiction to prosecute defendants for the whole crime.
Inasmuch as neither defendants nor their associates accepted or received bets in Nassau County, the People necessarily relied on evidence of the other element, that defendants promoted gambling in Nassau County by laying off bets there. The evidence of the People's case rested almost entirely on the testimony of two undercover officers and tapes of intercepted telephone calls to the Meacham operation. It established that defendants' accomplice, Rothman, placed phone calls from Manhattan to the Nassau County bookmaking operation to lay *449 off bets on the days specified in the indictment. By hedging bets with another bookmaker, Rothman advanced gambling activity within the meaning of the statute because he (1) acted as other than a "player" (defined in Penal Law § 225.00 [3]); (2) he materially aided a bookmaking operation by reducing its risk of heavy losses; and (3) his conduct was directed toward a critical phase of the gambling businessits profitability on a particular game as well as its over-all financial viability.[2]
Moreover, he did so in Nassau County because the Criminal Procedure Law provides that oral statements made over the telephone are deemed to be statements made in both the sending and receiving counties (see, CPL 20.60 [1]; see also, People v Botta, 100 AD2d 311, 315, lv denied 62 N.Y.2d 805). Thus, even though Rothman operated in Manhattan and placed telephone calls to Nassau County from there, Nassau County was a proper venue for prosecution of the crimes. Inasmuch as defendants were accomplices of Rothman, they too could be prosecuted in Nassau County.

III
Defendants contend further that inasmuch as the Appellate Division reversed defendants' conspiracy convictions for insufficient evidence, no predicate remains for jurisdiction in Nassau County because the trial court in its supplemental charge, in effect, directed a verdict on jurisdiction based on the conspiracy count of the indictment.
Preliminarily we note that the record contains abundant evidence from the undercover officers and the tapes to establish beyond a reasonable doubt that Rothman made the hedge bets to the Meacham operation in Nassau County. Indeed, defendants do not dispute this evidence. Their primary contention is that even though these acts were established beyond a reasonable doubt, (1) the trial court's expanded charge on jurisdiction requires the court to presume that the jury found jurisdiction for all counts based on the conspiracy, and thus (2) because the Appellate Division reversed the conspiracy convictions, the promoting gambling convictions must also be reversed.
In its initial charge, the trial court correctly instructed the jury that it must find that Nassau County had jurisdiction to *450 prosecute each count of the indictment by a preponderance of the evidence. Consistent with the provisions of subdivisions (1) (a) and (1) (b) of CPL 20.40, it charged the jury that it could find jurisdiction if it found conduct occurred within Nassau County sufficient to establish an element of the crime or a conspiracy to commit the crime. It then charged the jury separately on the promoting counts and on count 20, the conspiracy count, instructing the jury that as to conspiracy the jury must find an overt act committed in Nassau County to support the charge that defendants conspired to promote gambling in Nassau County. Defendants did not object to any part of this charge when given, or when it was subsequently reread in response to requests by the jury during deliberations.
On the second day of deliberations, the jury again requested a reread of the charge on jurisdiction. After consultation with counsel, the court stated that it intended to repeat its initial charge and to expand its instructions, over defense objections that doing so would direct a verdict against defendants. When it instructed the jury, the court pointed out once again that there were two ways the People could establish jurisdiction  by establishing that an element of the crime of promoting gambling occurred in the county  or by establishing a conspiracy to commit the object crime of promoting gambling in the county. The court then went on to state "I would suggest, I am certainly not directing, I would suggest that you might want to consider first in your deliberations the 20th count of the indictment, the conspiracy count." It advised the jury that if it found beyond a reasonable doubt each and every element of conspiracy and that an overt act in furtherance of the conspiracy was committed in Nassau County, then Nassau's jurisdiction to prosecute both the conspiracy charge and the promoting gambling charges would be established. The court further instructed the jury that if the People had not proven the conspiracy count to its satisfaction, the jury must still consider, for each of the counts charging promoting gambling, whether the People had proven "that the defendants or any one of them or their aiders and abetters committed an element of that crime of promoting gambling within Nassau County." Following these instructions, the jury deliberated further until it requested a reread of the instruction on aiding and abetting. *451 Shortly after receiving those additional instructions, the jury returned the guilty verdicts.[3]
The supplemental charge was correct, indeed no objection to the substance of it was made. Moreover, the instruction left all factual determinations to the jury and provided it with an analytical framework within which to determine the jurisdictional questions under CPL 20.40 (1) (see also, Penal Law § 105.25 [1]). In short, the court instructed the jury that if it found certain factual matters proven, those facts would establish jurisdiction. It did not tell them that it had to find an agreement or an overt act and it did not "direct" a verdict on the conspiracy count, the promoting counts or on the question of jurisdiction.
The jury rendered a general verdict and there is no way to determine if its finding of jurisdiction for the promoting gambling counts was based on the conspiracy or on an element of promoting gambling. Under such circumstances, the court is not compelled to assume that the jury found jurisdiction based upon unproven conduct. Where, as here, a general verdict has been rendered and there are two lawful grounds upon which the jury could have reached that verdict but one of those grounds lacks support in the evidence, we may presume that the jury reached its determination upon the factually sufficient grounds (see, Griffin v United States, 502 US 46). Even if the court erred in its charge, and we conclude it did not, the fact that neither theory of geographical jurisdiction was illegal permits harmless error review (see, People v Martinez, 83 N.Y.2d 26, 35, cert denied ___ US ___, 114 S Ct 2153; and compare, People v Ribowsky, 77 N.Y.2d 284, 292, supra).
In this case the People established that defendants, by their accomplice Rothman, hedged bets by telephone calls to the Meacham operation in Nassau County. This established geographical jurisdiction for the promoting gambling counts and the jury was properly charged on the point. Rothman's calls may have been the only conduct occurring in Nassau *452 County, as defendants maintain, but they constituted both overt acts, whether pleaded as such or not, and the first element of promoting gambling and established a jurisdictional predicate for both the crimes of promoting gambling and conspiracy to promote gambling.[4] This is so because separate and apart from the jurisdictional issue, the jury found beyond a reasonable doubt that defendants were guilty of promoting gambling in the first degree on the dates that Rothman placed calls to Nassau County. That verdict "necessarily implies" a finding of proper venue by a preponderance of the evidence (see, People v Ribowsky, 77 NY2d, at 292, supra) and under the well-settled common-law rule applied in Griffin v United States (supra), we need not now reverse the convictions for promoting gambling based upon the speculation that the jury found jurisdiction based on a conspiracy not established by the evidence.

IV
Defendants' remaining arguments are without merit. The Trial Judge complied with our decision in People v O'Rama (78 N.Y.2d 270), insofar as he sought input from counsel with respect to requests from the deliberating jury and thereafter advised the parties of the substance of the court's intended response. Defendants' contention that they received harsher sentences than their plea-bargaining codefendants as punishment for exercising their right to a jury trial is unpreserved for this Court's review (see, People v Hurley, 75 N.Y.2d 887). Accordingly, the order of the Appellate Division should be affirmed.
TITONE, J. (dissenting).
Defendants were tried on gambling charges on the basis of evidence which tended to show that they had participated in the operation of a Manhattan "wireroom" that accepted bets from the public. The only nexus between defendants' gambling activities and Nassau County was the series of telephone calls an associate Rothman made to place "hedge" bets with an unaffiliated Nassau County bookmaker. On the basis of these facts, the majority holds that the criminal courts of Nassau County had jurisdiction to try defendants for the crime of promoting gambling in the first degree. I disagree. In my view, the majority's holding is premised on a fundamental misreading of the nature and essential *453 elements of the gambling crime with which defendants were charged. Accordingly, I dissent and cast my vote to dismiss the remaining counts in the indictment.

I.
Under CPL 20.40 (1) (a), an individual may be tried for an offense within a particular county when there has been conduct within the county "sufficient to establish * * * [a]n element of such offense." Use of this jurisdictional predicate requires a close analysis of the statutory elements of the offense for which the defendant is to be tried: in this case, promoting gambling in the first degree.
The Penal Law defines that crime as follows:
"A person is guilty of promoting gambling in the first degree when he knowingly advances or profits from unlawful gambling activity by:
"1. Engaging in bookmaking to the extent that he receives or accepts in any one day more than five bets totaling more than five thousand dollars" (Penal Law § 225.10 [1]).
"`Bookmaking' means advancing gambling activity by unlawfully accepting bets from members of the public as a business, rather than in a casual or personal fashion" (id., § 225.00 [9]).
The majority concludes that "knowingly advanc[ing] or profit[ing] from unlawful gambling activity" and "[e]ngaging in bookmaking" are separate elements of the promoting gambling crime with which defendants were charged. Relying on this interpretation of Penal Law § 225.10 (1), the majority then concludes that defendants may be tried in Nassau County because hedging by "laying off" bets with another bookmaker is a risk-reducing act that can advance illegal gambling activity and because defendants' accomplice engaged in such conduct within Nassau County by telephonically placing "hedge" bets with a bookmaker located within that jurisdiction.
The flaw in the majority's analysis is that it treats the statutory requirement of conduct constituting bookmaking as an independent crime element rather than what it actually is: an integral part of the statutorily defined actus reus. As the language and structure of Penal Law § 225.10 make clear, a person is guilty of first degree promoting gambling only if that person "advances or profits from unlawful gambling" in a particular *454 way, i.e., "by [e]ngaging in bookmaking." Acts that advance illegal gambling in general or through other specific means, including "laying off" or placing "hedging" bets, may satisfy the less precise actus requirement of the misdemeanor crime of promoting gambling (Penal Law § 225.05), but they do not constitute the particular act that Penal Law § 225.10 (1) prohibits.
That "engaging in bookmaking" through accepting bets is an integral part of the actus reus element of first degree promoting gambling is apparent from the grammatical structure of the statute. The "advancing illegal gambling" component is joined to the "bookmaking" component by the prepositional connector "by" rather than by a conjunctive or disjunctive connector such as "and" or "or". This usage demonstrates that the phrase "by engaging in bookmaking" operates as a restrictive clause which modifies and limits the broad "advancing illegal gambling" component. Indeed, without excising the word "by" from the statute, it is impossible to read the prohibition against "advanc[ing] or profit[ing] from unlawful gambling activity" as an element separate from the ban on bookmaking.
Significantly, when the Legislature has wanted to elevate the level of a crime through the addition of a separate aggravating element, it has consistently used the conjunctive words "and" and "or" (e.g., Penal Law §§ 140.25 ["(a) person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully * * * and when (other specified conditions are met)"] [emphasis supplied], 160.10 ["(a) person is guilty of robbery in the second degree when he forcibly steals property and when (other specific conditions are met)"] [emphasis supplied]). The absence of a similar formulation in section 225.10 negates any inference that "engag[ing] in bookmaking" is merely an aggravating element appended to the basic misdemeanor promoting gambling crime in order to create a more serious felony-level offense with concomitantly enhanced punishment.
The conclusion that the actus reus element set forth in Penal Law § 225.10 (1) cannot be committed except by accepting bets is also supported by the history of the current gambling statutes. The former Penal Law contained two articles and some 54 sections (former Penal Law arts 88, 130), all addressing the "promotion" of gambling by professionals rather than the private acts of individual gamblers (see, Watts v Malatesta, 262 N.Y. 80, 81-83; People v Stedeker, 175 N.Y. 57, 62). Most of the gambling statutes described particularized prohibited *455 conduct and outlawed specific games or schemes. As one commentator has noted, "[t]his resulted in a multiplicity of statutes addressed to different forms of gambling activity, some of them waxing extremely prolix and over-specific in their endeavors to cover every type of act by which one may promote or aid in the promotion of a given type of gambling" (Hechtman, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law art 225, at 112 [1980]).
To remedy this over specificity, the drafters of the current Penal Law created what is now Penal Law § 220.05, which was to define "a basic offense covering almost the entire spectrum of gambling crimes" (Staff Notes of New York State Commission on Revision of Penal Law and Criminal Code, McKinney's Spec Pamph, at 382 [1964]). The crime delineated in this statute, promoting gambling in the second degree, was intended to be a "general, fundamental section" "encompass[ing] all forms of promotional conduct" (id.). However, the specificity of the former Penal Law was not entirely obliterated. To the contrary, the catchall misdemeanor crime set forth in section 225.05 was intended to be "augmented by a few narrower ones which carried over from the [predecessor provisions]" (Staff Notes, op. cit., at 382).
Included among these carry-over provisions was Penal Law § 225.10 (1)'s felony-level crime of promoting gambling in the first degree, which "substantially restates [former] Penal Law § 986-c" (Staff Notes, op. cit., at 383). Section 986-c provided:
"Any person engaged in book-making to the extent that he receives or accepts in any one day more than five bets or wagers * * *, which bets or wagers shall be of such size that the total of the amounts of money paid or promised to be paid * * * shall exceed five thousand dollars, shall be guilty of a felony" (L 1960, ch 548 [emphasis supplied]).
Since the "corpus delicti" of the crime of bookmaking was accepting bets (People v Abelson, 309 N.Y. 643, 650) and since Penal Law § 225.10 (1) "substantially restates" that crime, it is fair to infer that the restrictive language in the current provisions of section 225.10 (1) was intentional and that accepting *456 bets is the promotional act  and indeed the only promotional act  that the statute was meant to reach.[*]
The majority's reliance on the duplicative use of the phrase "advancing gambling activity" in both the lead-in language of section 225.10 and the definition of "bookmaking" is puzzling. Regardless of whether or not the "advancing gambling activity" language in section 225.10 (1) is construed as a separate element, the redundancy that concerns the majority remains. In either event, the phrase "advancing gambling activity" is repeated with no apparent substantive purpose. The more likely explanation for the phrase's redundancy lies in the history of the antigambling laws. Although the original statutory gambling prohibitions were fragmented, they were held together by a common theme: only the promoter of gambling was to be penalized (see, Watts v Malatesta, supra). Since the drafters of the new consolidated statutes sought to preserve this humane principle (see, Staff Notes, op. cit., at 383), they naturally incorporated it into the key definitional provisions as well as the core substantive prohibitory provisions. The result was a degree of harmless duplication with no substantive significance.
It is telling that despite the majority's extended discussion, its opinion contains no plain statement of what the majority believes the actus reus of the crime to be. The omission is not accidental, since no such statement can be made without betraying the fundamental fallacy in the Court's holding. Under the majority's formula, "advancing gambling activity" and "bookmaking" are separate elements. Yet, the distinction between them is elusive at best, since the concept of "advancing gambling activity" is, both logically and by statutory definition, an integral part of the act of bookmaking (see, Penal Law § 225.00 [9]).
Further, if, as the majority contends, "advancing gambling activity" somehow has independent significance and, as here, may be satisfied through acts other than taking bets, the crime of promoting gambling in the first degree would be committed when a person "knowingly advances or profits from unlawful gambling [through conduct other than bookmaking] by [e]ngaging in bookmaking" (see, Penal Law § 225.10 [1]). More specifically, as applied to this case, the majority's formula would *457 have to be that defendant and his accomplices were guilty of promoting gambling in the first degree because they "knowingly advance[d] * * * unlawful gambling [by placing `hedge bets' in Nassau County] by [e]ngaging in bookmaking" (see, id.). Such a linguistically paradoxical outcome cannot have been what the Legislature intended.
It is true, as the People stress, that "advanc[ing] or profit[ing] from unlawful gambling" is something that the People had to prove in order to establish the actus reus element of the crime of promoting gambling in the first degree. However, under CPL 20.40 (1) (a), it is not sufficient that conduct tending to prove an element  or, as in this case, a part of an element  occurred within the County's borders. Rather, the conduct occurring within the County must be sufficient to establish an entire crime element. Inasmuch as the conduct that occurred here in Nassau County  the placing of "hedge" bets  did not suffice to establish any unitary element of the crime, the indictment for first degree promoting gambling should have been dismissed.

II.
Even if there were a theoretically acceptable factual predicate for Nassau County's exercise of jurisdiction, the judgment of conviction would have to be reversed and a new trial granted because of the manner in which the geographic jurisdiction issue was submitted to the jury. Incorporating the then-pending conspiracy charge, the trial court told the jury that it could find geographical jurisdiction in Nassau County if the People had proved, by a preponderance of the evidence, either that (1) conduct occurred in Nassau County sufficient to constitute an element of first degree promoting gambling or (2) defendants had conspired with the Nassau County wireroom participants to promote gambling in the first degree and one of the conspirators had committed an overt act in that County (see, CPL 20.40 [1] [a], [b]). It is now undisputed that the second alternative should not have been submitted, since, as the Appellate Division held, there was legally insufficient evidence to establish defendants' participation in a conspiracy with the Nassau County wireroom operators.
The People contend that the foregoing charge error does not require reversal because it may be assumed that the jury did not predicate its finding of geographical jurisdiction on the theory that was not supported by legally sufficient proof (see, Griffin v United States, 502 US 46). Whatever the validity of *458 that inference in other cases (cf., People v Martinez, 83 N.Y.2d 26, 32-34), however, it has no persuasive force here.
The assumption that the jury must have rejected the theory that was not supported by the evidence is squarely belied in this case by the jury's own verdict, which found defendants guilty on the conspiracy count. Further, the jury's reliance on the purported conspiracy as the predicate for its finding on geographical jurisdiction is evident from the sequence of events that the record reveals. Having asked for reinstruction on the geographical jurisdiction issue, the jury was told that it should "consider first the [conspiracy] count" and that if it found defendants guilty on that count "then there exists jurisdiction for the promoting counts." The jury was also told that "Nassau County has jurisdiction of a crime when conduct occurred within Nassau County sufficient to establish a conspiracy to commit that crime" and that "if you find the conspiracy, then you've found, in effect, the jurisdiction for promoting gambling." Given these instructions, which were followed almost immediately by the jury's verdict, the most plausible and natural inference is that the jury found jurisdiction for the latter charge because of its erroneous determination that defendants were guilty of conspiracy. Certainly, on this record, we cannot straight-facedly "presume" that the verdict on the geographical jurisdiction question was not the product of the conspiracy theory that was erroneously submitted. Indeed, relying on such a presumption in these circumstances is to elevate a legal construct above common sense, particularly since we know for a fact that this jury did not reject the factually unsupported theory.
Accordingly, there is, in my view, no legal or logical justification for upholding the judgment of conviction for first degree promoting gambling against defendants. Since I also conclude that there is no view of the facts which would support a finding that Nassau County has jurisdiction to prosecute, my vote is to reverse the order of the Appellate Division and dismiss the remaining counts in the indictment.
Order affirmed.
NOTES
[1] The indictment actually involved five bookmaking operations in the New York metropolitan area and it charged 13 other individuals with numerous counts of promoting gambling in the first degree. In addition, count 20 of the indictment charged all 16, including defendants, with conspiracy in the fifth degree. The count alleged that all of the individuals charged were engaged in a common scheme and plan to promote gambling in the first degree.

All these parties pleaded guilty before trial except defendants and codefendants Patsy Capolongo and Edward Pagnotta, Sr., who was a member of the Meacham bookmaking operation. Defendant Capolongo entered a guilty plea during jury selection, and defendant Pagnotta died during the trial. Thus, appellants were the only individuals prosecuted to a jury verdict.
[2] The business nature of the activity was demonstrated by evidence that Rothman was on a "half sheet" and ran up a "red figure", terms meaning that Rothman either maintained credits or debits with the Meacham operation depending on the results of his hedge bets over a period of time.
[3] Defendants and the dissenters contend that the rendition of the jury verdict shortly after the supplemental charge compels the inference that jurisdiction for the promoting gambling counts was founded on the supplemental conspiracy instruction. As noted, however, after that instruction but before rendering the verdicts, the jury requested and heard a rereading of the charge on aiding and abetting  a matter relevant to the promoting gambling counts but not the conspiracy count. Thus, it is equally inferable, if not more so, that the jury found jurisdiction for the promoting gambling charges by finding that conduct establishing an element of that crime was committed in Nassau County.
[4] Notably, the Appellate Division reversal was expressly based on the insufficient evidence of an agreement, not any failure to prove overt acts in Nassau County.
[*] The majority's assertion that Penal Law § 225.10 was merely intended to augment the "core crime" of promoting gambling through the addition of extra aggravating elements (see, majority opn, at 446, 447) finds no support in the legislative history and is, in fact, contradicted by the history.