Titone, J.
(dissenting). Defendants were tried on gambling charges on the basis of evidence which tended to show that they had participated in the operation of a Manhattan "wire-room” that accepted bets from the public. The only nexus between defendants’ gambling activities and Nassau County was the series of telephone calls an associate Rothman made to place "hedge” bets with an unaffiliated Nassau County bookmaker. On the basis of these facts, the majority holds that the criminal courts of Nassau County had jurisdiction to try defendants for the crime of promoting gambling in the first degree. I disagree. In my view, the majority’s holding is premised on a fundamental misreading of the nature and es *453 sential elements of the gambling crime with which defendants were charged. Accordingly, I dissent and cast my vote to dismiss the remaining counts in the indictment.
L
Under CPL 20.40 (1) (a), an individual may be tried for an offense within a particular county when there has been conduct within the county "sufficient to establish * * * [a]n element of such offense.” Use of this jurisdictional predicate requires a close analysis of the statutory elements of the offense for which the defendant is to be tried: in this case, promoting gambling in the first degree.
The Penal Law defines that crime as follows:
"A person is guilty of promoting gambling in the first degree when he knowingly advances or profits from unlawful gambling activity by:
"1. Engaging in bookmaking to the extent that he receives or accepts in any one day more than five bets totaling more than five thousand dollars” (Penal Law § 225.10 [1]).
" 'Bookmaking’ means advancing gambling activity by unlawfully accepting bets from members of the public as a business, rather than in a casual or personal fashion” (id., § 225.00 [9]).
The majority concludes that "knowingly advancing] or profiting] from unlawful gambling activity” and "[e]ngaging in bookmaking” are separate elements of the promoting gambling crime with which defendants were charged. Relying on this interpretation of Penal Law § 225.10 (1), the majority then concludes that defendants may be tried in Nassau County because hedging by "laying off” bets with another bookmaker is a risk-reducing act that can advance illegal gambling activity and because defendants’ accomplice engaged in such conduct within Nassau County by telephonically placing "hedge” bets with a bookmaker located within that jurisdiction.
The flaw in the majority’s analysis is that it treats the statutory requirement of conduct constituting bookmaking as an independent crime element rather than what it actually is: an integral part of the statutorily defined actus reus. As the language and structure of Penal Law § 225.10 make clear, a person is guilty of first degree promoting gambling only if that person "advances or profits from unlawful gambling” in a par *454 ticular way, i.e., "by [e]ngaging in bookmaking.” Acts that advance illegal gambling in general or through other specific means, including "laying off” or placing "hedging” bets, may satisfy the less precise actus requirement of the misdemeanor crime of promoting gambling (Penal Law § 225.05), but they do not constitute the particular act that Penal Law § 225.10 (1) prohibits.
That "engaging in bookmaking” through accepting bets is an integral part of the actus reus element of first degree promoting gambling is apparent from the grammatical structure of the statute. The "advancing illegal gambling” component is joined to the "bookmaking” component by the prepositional connector "by” rather than by a conjunctive or disjunctive connector such as "and” or "or”. This usage demonstrates that the phrase "by engaging in bookmaking” operates as a restrictive clause which modifies and limits the broad "advancing illegal gambling” component. Indeed, without excising the word "by” from the statute, it is impossible to read the prohibition against "advancing] or profit[ing] from unlawful gambling activity” as an element separate from the ban on bookmaking.
Significantly, when the Legislature has wanted to elevate the level of a crime through the addition of a separate aggravating element, it has consistently used the conjunctive words "and” and "or” (e.g, Penal Law §§ 140.25 ["(a) person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully * * * and when (other specified conditions are met)”] [emphasis supplied], 160.10 ["(a) person is guilty of robbery in the second degree when he forcibly steals property and when (other specific conditions are met)”] [emphasis supplied]). The absence of a similar formulation in section 225.10 negates any inference that "engag[ing] in bookmaking” is merely an aggravating element appended to the basic misdemeanor promoting gambling crime in order to create a more serious felony-level offense with concomitantly enhanced punishment.
The conclusion that the actus reus element set forth in Penal Law § 225.10 (1) cannot be committed except by accepting bets is also supported by the history of the current gambling statutes. The former Penal Law contained two articles and some 54 sections (former Penal Law arts 88, 130), all addressing the "promotion” of gambling by professionals rather than the private acts of individual gamblers (see, Watts v Malatesta, 262 NY 80, 81-83; People v Stedeker, 175 NY 57, 62). Most of the gambling statutes described particularized prohibited *455 conduct and outlawed specific games or schemes. As one commentator has noted, "[t]his resulted in a multiplicity of statutes addressed to different forms of gambling activity, some of them waxing extremely prolix and over-specific in their endeavors to cover every type of act by which one may promote or aid in the promotion of a given type of gambling” (Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 225, at 112 [1980]).
To remedy this over specificity, the drafters of the current Penal Law created what is now Penal Law § 220.05, which was to define "a basic offense covering almost the entire spectrum of gambling crimes” (Staff Notes of New York State Commission on Revision of Penal Law and Criminal Code, McKinney’s Spec Pamph, at 382 [1964]). The crime delineated in this statute, promoting gambling in the second degree, was intended to be a "general, fundamental section” * 'encompassing] all forms of promotional conduct” (id.). However, the specificity of the former Penal Law was not entirely obliterated. To the contrary, the catchall misdemeanor crime set forth in section 225.05 was intended to be "augmented by a few narrower ones which carried over from the [predecessor provisions]” (Staff Notes, op. cit, at 382).
Included among these carry-over provisions was Penal Law § 225.10 (l)’s felony-level crime of promoting gambling in the first degree, which "substantially restates [former] Penal Law § 986-c” (Staff Notes, op. cit, at 383). Section 986-c provided:
"Any person engaged in book-making to the extent that he receives or accepts in any one day more than five bets or wagers * * *, which bets or wagers shall be of such size that the total of the amounts of money paid or promised to be paid * * * shall exceed five thousand dollars, shall be guilty of a felony” (L 1960, ch 548 [emphasis supplied]).
Since the "corpus delicti” of the crime of bookmaking was accepting bets (People v Abelson, 309 NY 643, 650) and since Penal Law § 225.10 (1) "substantially restates” that crime, it is fair to infer that the restrictive language in the current provisions of section 225.10 (1) was intentional and that accepting *456 bets is the promotional act — and indeed the only promotional act — that the statute was meant to reach.*
The majority’s reliance on the duplicative use of the phrase "advancing gambling activity” in both the lead-in language of section 225.10 and the definition of "bookmaking” is puzzling. Regardless of whether or not the "advancing gambling activity” language in section 225.10 (1) is construed as a separate element, the redundancy that concerns the majority remains. In either event, the phrase "advancing gambling activity” is repeated with no apparent substantive purpose. The more likely explanation for the phrase’s redundancy lies in the history of the antigambling laws. Although the original statutory gambling prohibitions were fragmented, they were held together by a common theme: only the promoter of gambling was to be penalized (see, Watts v Malatesta, supra). Since the drafters of the new consolidated statutes sought to preserve this humane principle (see, Staff Notes, op. cit, at 383), they naturally incorporated it into the key definitional provisions as well as the core substantive prohibitory provisions. The result was a degree of harmless duplication with no substantive significance.
It is telling that despite the majority’s extended discussion, its opinion contains no plain statement of what the majority believes the actus reus of the crime to be. The omission is not accidental, since no such statement can be made without betraying the fundamental fallacy in the Court’s holding. Under the majority’s formula, "advancing gambling activity” and "bookmaking” are separate elements. Yet, the distinction between them is elusive at best, since the concept of "advancing gambling activity” is, both logically and by statutory definition, an integral part of the act of bookmaking (see, Penal Law § 225.00 [9]).
Further, if, as the majority contends, "advancing gambling activity” somehow has independent significance and, as here, may be satisfied through acts other than taking bets, the crime of promoting gambling in the first degree would be committed when a person "knowingly advances or profits from unlawful gambling [through conduct other than bookmaking] by [e]ngaging in bookmaking” (see, Penal Law § 225.10 [1]). More specifically, as applied to this case, the majority’s formula would *457 have to be that defendant and his accomplices were guilty of promoting gambling in the first degree because they "knowingly advance[d] * * * unlawful gambling [by placing 'hedge bets’ in Nassau County] by [e]ngaging in bookmaking” (see, id.). Such a linguistically paradoxical outcome cannot have been what the Legislature intended.
It is true, as the People stress, that "advanc[ing] or profit-ting] from unlawful gambling” is something that the People had to prove in order to establish the actus reus element of the crime of promoting gambling in the first degree. However, under CPL 20.40 (1) (a), it is not sufficient that conduct tending to prove an element — or, as in this case, a part of an element— occurred within the County’s borders. Rather, the conduct occurring within the County must be sufficient to establish an entire crime element. Inasmuch as the conduct that occurred here in Nassau County — the placing of "hedge” bets — did not suffice to establish any unitary element of the crime, the indictment for first degree promoting gambling should have been dismissed.
IL
Even if there were a theoretically acceptable factual predicate for Nassau County’s exercise of jurisdiction, the judgment of conviction would have to be reversed and a new trial granted because of the manner in which the geographic jurisdiction issue was submitted to the jury. Incorporating the then-pending conspiracy charge, the trial court told the jury that it could find geographical jurisdiction in Nassau County if the People had proved, by a preponderance of the evidence, either that (1) conduct occurred in Nassau County sufficient to constitute an element of first degree promoting gambling or (2) defendants had conspired with the Nassau County wireroom participants to promote gambling in the first degree and one of the conspirators had committed an overt act in that County (see, CPL 20.40 [1] [a], [b]). It is now undisputed that the second alternative should not have been submitted, since, as the Appellate Division held, there was legally insufficient evidence to establish defendants’ participation in a conspiracy with the Nassau County wireroom operators.
The People contend that the foregoing charge error does not require reversal because it may be assumed that the jury did not predicate its finding of geographical jurisdiction on the theory that was not supported by legally sufficient proof (see, Griffin v United States, 502 US 46). Whatever the validity of *458 that inference in other cases (cf., People v Martinez, 83 NY2d 26, 32-34), however, it has no persuasive force here.
The assumption that the jury must have rejected the theory that was not supported by the evidence is squarely belied in this case by the jury’s own verdict, which found defendants guilty on the conspiracy count. Further, the jury’s reliance on the purported conspiracy as the predicate for its finding on geographical jurisdiction is evident from the sequence of events that the record reveals. Having asked for reinstruction on the geographical jurisdiction issue, the jury was told that it should "consider first the [conspiracy] count” and that if it found defendants guilty on that count "then there exists jurisdiction for the promoting counts.” The jury was also told that "Nassau County has jurisdiction of a crime when conduct occurred within Nassau County sufficient to establish a conspiracy to commit that crime” and that "if you find the conspiracy, then you’ve found, in effect, the jurisdiction for promoting gambling.” Given these instructions, which were followed almost immediately by the jury’s verdict, the most plausible and natural inference is that the jury found jurisdiction for the latter charge because of its erroneous determination that defendants were guilty of conspiracy. Certainly, on this record, we cannot straight-facedly "presume” that the verdict on the geographical jurisdiction question was not the product of the conspiracy theory that was erroneously submitted. Indeed, relying on such a presumption in these circumstances is to elevate a legal construct above common sense, particularly since we know for a fact that this jury did not reject the factually unsupported theory.
Accordingly, there is, in my view, no legal or logical justification for upholding the judgment of conviction for first degree promoting gambling against defendants. Since I also conclude that there is no view of the facts which would support a finding that Nassau County has jurisdiction to prosecute, my vote is to reverse the order of the Appellate Division and dismiss the remaining counts in the indictment.
Judges Bellacosa, Smith, Levine and Ciparick concur with Judge Simons; Judge Titone dissents and votes to reverse in a separate opinion in which Chief Judge Kaye concurs.
Order affirmed.

 The majority’s assertion that Penal Law § 225.10 was merely intended to augment the "core crime” of promoting gambling through the addition of extra aggravating elements (see, majority opn, at 446,447) finds no support in the legislative history and is, in fact, contradicted by the history.